J^PETTIGREW, J.
This is a suit for declaratory judgment filed by plaintiffs who seek to determine their rights pursuant to a marine contract. The trial court determined that the contract was valid, enforceable, and had not been breached by plaintiffs. From this judgment, defendants now appeal. We affirm.
FACTS
In late 1995, the offshore oil industry was experiencing a significant downturn and many supply vessels were not working. Raymond Rebstock (“Mr. Rebstock”) was the president and majority stockholder of two corporations, each of which owned a 110-foot utility vessel. Rebstock Marine Transportation, Inc. (“Rebstock Marine”) was the owner of the MTV ELEANORA, which had not worked since March 1995. Rebco Marine, Inc. (“Reb-co”) was the owner of the MTV BOB R., described as a rusting, inoperable hulk that had been recovered and towed to dry dock after having been partially sunk in *778 February 1993. The MTV BOB R. remained idle at dry dock while Rebco litigated with the vessel’s hull insurer that had denied coverage for losses incurred as a result of the sinking.
In December 1995, Mr. Rebstock was approached by Tony Bruce (“Mr. Bruce”) who inquired whether Mr. Rebstock would be interested in leasing or possibly selling the M/V ELEANORA. On December 22, 1995, Mr. Rebstock, appearing on behalf of Rebstock Marine and Rebco, met with Messrs. Wiley Falgout (“Mr.Falgout”), Mr. Bruce and Aldon Wahl (“Mr.Wahl”), partners of MKM, L.L.C. (“MKM”) (collectively referred to as “plaintiffs”), at the office of their then-attorney, Wayne Le-Bouef (“Mr. LeBouef’).[2] During the course of the meeting, Mr. Rebstock, unaided by legal counsel, negotiated the terms of an agreement with plaintiffs regarding the M/V ELEANORA and the M/V BOB R. Mr. LeBouef then proceeded to reduce to writing the agreement reached by the parties.
At the December 22, 1995 meeting, Mr. Rebstock (as president of Rebstock Marine and Rebco) and Mr. Falgout (as agent and CEO of MKM) signed a document styled, OPTION AGREEMENT ON PROPOSED “LEASE WITH OPTION TO PURCHASE” ON THE M/V 1 ¿‘ELEANORA” AND OPTION AGREEMENT ON PROPOSED PURCHASE OF THE M/V “BOB R.” Over the next several days, the parties executed a succession of similar agreements culminating in an agreement dated December 28,1995.
The document ultimately signed by Mr. Rebstock and Mr. Falgout on December 28, 1995, was styled, LEASE WITH OPTION TO PURCHASE ON THE M/V “ELEANORA” AND OPTION AGREEMENT ON PROPOSED PURCHASE OF THE M/V “BOB R.” The December 28, 1995 agreement acknowledged receipt of one hundred dollars cash consideration, and provided for the lease by MKM of the M/V ELEANORA (now the M/V COMMANDER) from Rebstock Marine for a period of sixty (60) months, at a charter hire rate of $2,500.00 per month. During the term of the lease, MKM was given the exclusive option to purchase the M/V ELEANORA from Rebstock Marine for $140,000.00, less the charter hire payments made as of that date. The agreement further provided as follows:
Contingent Right to Purchase M/V “Bob R.”. Prospective seller Rebco Marine, Inc. acknowledges that Lessee has additionally expressed an interest in the possible purchase of another vessel, specifically the M/V “Bob R.,” Official Number 631077, for the sum of $50,000. Various issues involving said vessel are currently in litigation which has to date been favorable to prospective seller Rebco Marine, Inc., specifically an affirming of a favorable trial court decision by the Louisiana First Circuit Court of Appeal. The defendant insurer has applied to the Louisiana Supreme Court via writ of certiorari. Should said litigation be finally and definitively resolved in favor of prospective seller Reb-co Marine, Inc. and Rebco Marine, Inc. be able to deliver a clear and merchantable title to Lessee, including a release of said vessel from its existing Community Bank of Lafourche mortgage, Lessee shall have sixty (60) days from receipt in writing from Rebco Marine, Inc., via certified mail, of final favorable disposition of the aforementioned litigation and Rebco Marine, Inc.’s providing Lessee with the requisite current U.S. Coast Guard Form CG-1332 (“General Index or Abstract of Title”) to purchase the M/V “Bob R[.]” for the sum of $50,000. Lessir [sic] warrants and represents that Community Bank of La-fourche agrees to release the M/V “Bob R.,” Official Number 631077, from any and all of prospective seller’s then indebtedness with said bank upon the *779 bank’s receipt of the aforementioned $50,000 purchase price.
Subsequent to the execution of the December 28, 1995 agreement, the offshore oil industry experienced enormous growth due to an oil boom. As a result, utility vessels such as the M/V ELEANORA and M/V BOB R. were in great demand. Correspondingly, the charter hire rate said vessels could generate increased dramatically. MKM took possession of the M/V ELEANORA and began making monthly lease payments to the bank in accordance with the agreement.
|4In late 1996 or early 1997, plaintiffs met with Mr. Rebstock and advised him that they intended to exercise their option to purchase the M/V BOB R. for $50,000.00. Mr. Rebstock purportedly indicated that he was going to try to avoid the agreement to transfer title of the M/V BOB R. Thereafter, Mr. Rebstock undertook the extensive repairs necessary to refurbish the M/V BOB R., which until this time, had been incurring docking and storage charges at Alied Shipyard in La-rose, Louisiana. On March 13, 1997, MKM received correspondence from Reb-' stock Marine and Rebco alleging that MKM was in default of the agreement for failure to make its lease payments on the M/V ELEANORA by the 10th of the month. Rebstock Marine and Rebco further demanded the return of the M/V ELEANORA and maintained that MKM was precluded from exercising its option to purchase the M/V ELEANORA and the M/V BOB R. due to this alleged breach. Rebstock Marine and Rebco also issued a Notice of Default and Termination of Lease Agreement and Options to Purchase based upon MKM’s purported failure to make its lease payment timely. Later, MKM received correspondence from the bank returning its March 12, 1997 lease check “at the direction of Rebstock.” Nevertheless, MKM continued to forward its monthly payments to the bank; however, these payments were returned each month.
On March 19, 1997, MKM filed a Petition for Declaratory Judgment seeking to enforce the terms and conditions of the December 28,1995 “Lease With Option To Purchase on the M/V ‘ELEANORA’ and Option Agreement on Proposed Purchase of the M/V ‘BOB R’ ” contract between MKM and Rebstock Marine and Rebco.
The insurance litigation relative to the earlier sinking of the M/V BOB R. was ultimately concluded in December 1997. See Rebco Marine, Inc. v. Homestead Insurance Company, 96-1975 (La.App. 1 Cir. 12/29/97), 706 So.2d 508. Nevertheless, neither Mr. Rebstock nor Rebco provided plaintiffs with written notice of the favorable disposition of the insurance litigation.
ACTION OF THE TRIAL COURT
Rebstock Marine and Rebco answered the instant suit and filed a reconventional demand seeking cancellation of the lease agreement, return of the M/V ELEANO-RA and damages as a result of MKM’s default. Thereafter, MKM filed a Motion For Summary | BJudgment or, in the alternative, motion for Temporary Restraining Order and Preliminary Injunction enjoining defendants and their representatives from seizing, repossessing or in any way affecting the operation of the M/V ELEANORA prior to the disposition of this matter.
Prior to the scheduled hearing on MKM’s motion, Rebstock Marine and Reb-co filed a peremptory exception raising the objection of no right of action and asserting that MKM could not maintain the instant suit for the reason that it was not a legal entity.[3] A Second Supplemental and *780 Amended Petition for Declaratory Judgment was subsequently filed on behalf MKM on July 17, 1997, and all references to petitioner, “MKM, L.L.C.” were changed to “Wiley J. Falgout, Aldon G. Wahl, Jr. and Tony G. Bruce, d/b/a MKM L.L.C.” The trial judge later denied MKM’s motion for summary judgment.
On September 10, 1997, Rebstock Marine and Rebco filed a third party demand against Gulf Tran, Inc. (“Gulf Tran”), the operator of the MTV ELEANORA. Reb-stock Marine and Rebco later filed a third amended reconventional demand averring that Rebstock Marine and Rebco were under no legal obligation to sell the MTV BOB R. to anyone, and in the alternative, and only in the event that Rebstock Marine and Rebco are ordered to sell the M/V BOB R. for $50,000.00 or for any other sum, then and in that event, Rebstock Marine and Rebco set forth a claim in the amount of $650,000.00 for all sums expended in repairing and refurbishing the vessel.
Following the trial of this matter, the trial court granted plaintiffs’ request for declaratory judgment, and held that the December 28, 1995 agreement had not been breached by plaintiffs and was valid and enforceable. The trial court further held that the agreement granted plaintiffs the right to purchase the M/V BOB R. for the sum of $50,000.00, and that Rebco was obligated to deliver clear title to the vessel. The trial | ficourt also determined that Reb-co had breached the contract by failing to convey the M/V BOB R.
The trial court similarly upheld the provisions of the agreement insofar as they applied to Rebstock Marine and its lease to plaintiffs of the M/V ELEANORA. The judgment of the trial court dismissed the third party demand against Gulf Tran, and reconventional demand for reimbursement of monies spent repairing or refurbishing the M/V BOB R. filed by Rebstock Marine and Rebco. From this judgment, Rebstock Marine and Rebco now appeal.
At the outset of their brief to this court, Rebstock Marine and Rebco assert that during the pendency of this appeal, the parties were able to reach a “tentative agreement” relative to the lease of the M/V ELEANORA. Accordingly, all issues in this appeal relate to the prospective purchase of the M/V BOB R. All references to the M/V ELEANORA contained herein are included solely for the sake of clarity and elucidation of the remaining issues involving the M/V BOB R. Rebstock Marine and Rebco concede that although Rebstock Marine has no ownership interest in the M/V BOB R., it nevertheless technically remains a party to this litigation.
ASSIGNMENTS OF ERROR
In connection with their appeal in this matter, defendants Rebstock Marine and Rebco assign the following errors for consideration by this court:
1. Whether the district court erred in failing to declare the “contingent agreement on the possible purchase” of the M/V BOB R[.j null and void pursuant to Civil Code Article 1770 because it contained a suspensive condition which depended upon the whim of the “prospective seller”, Rebco Marine, Inc., and its president, Raymond Rebstock.
2. In the alternative, whether the contingent agreement on possible purchase of the M/V BOB R[.] was ambiguous, and the intent of the parties unclear, therefore requiring that the “agreement” should be interpreted against the principals of MKM, whose lawyer drafted the agreement.
3. Further in the alternative, whether the contingent agreement on possible purchase of the M/V BOB R[.], was revoked by Mr. Rebstock prior to suspen-sive conditions being met.
*781 4. Further in the alternative, whether the district court erred in dismissing defendants’ Third Amended Reconven-tional Demand, which resulted in unjust enrichment of the plaintiffs, who will receive a vessel now worth |7$845,500, for only $50,000, and without any accounting for the sum of $575,046.51, which has been spent by defendants to refurbish the vessel.
5. Further in the alternative, whether the district court erred in ordering specific performance in plaintiffs action for declaratory judgment, where specific performance is not an appropriate remedy in a declaratory judgment action, and where specific performance deprived defendants of any accounting for the large sum of money ($575,046.51) which they expended refurbishing the M/V BOB R.
DISCUSSION
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). When the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844, n. 2 (La.1989).
In their first assignment of error, Rebstock Marine and Rebco assert that the district court erred in failing to declare the “contingent agreement on the possible purchase” of the M/V BOB R. to be null and void pursuant to Civil Code Article 1770, because it contained a suspensive condition that depended upon the whim of the “prospective seller”, Rebco, and its president, Raymond Rebstock. Louisiana Civil Code Article 1770 provides:
A suspensive condition that depends solely on the whim of the obligor makes the obligation null.
A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith.
In their brief to this court, Rebstock Marine and Rebco argue that any option granted to plaintiffs under the terms of the agreement could not be exercised unless and until plaintiffs received written notice via certified mail from Rebco of final, favorable disposition of the pending insurance litigation. Rebstock Marine and Rebco contend that the decision to issue said notice depended solely upon the whim of Mr. Rebstock in the 1 sevent he wished to sell the M/V BOB R. at that point. Accordingly, Rebstock Marine and Rebco ague that the issuance of notice at the sole discretion or whim of Mr. Rebstock rendered the obligation null pursuant to Article 1770.
By way of response, plaintiffs argue that the option to purchase the M/V BOB R. did not contain a suspensive condition dependent solely upon the whim of Rebco. Plaintiffs assert that the option to purchase was conditioned only upon the successful resolution of the litigation involving the MW BOB R. and the ability of Rebco to transfer clear and merchantable title to the vessel. Both of .these conditions have since been satisfied.
The trial court, after reading that portion of the agreement relating to the M/V BOB R., concluded:

THE COURT:

Purchase the BOB R[.] for the sum of $50,000.00. If you [i.e., Rebco] win the [insurance] lawsuit, which you did, you [i.e., plaintiffs] had the option to buy the boat for $50,000.00.
MR. O’DWYER [Counsel for Rebco]:
All right. You see you’re reading it the way they want you to read it. Your Honor,--
*782 [[Image here]]

THE COURT:

I’m telling you. Read this to me in such a manner that shows that Ray Reb-stock has the right to give the vessel, to sell the vessel for $50,000.00. If he does that, he puts him[self] in the position where he was before, and where he has the right to sell the vessel or not to sell the vessel, depending upon what he wants to do. And you’re saying this gives him the right, it doesn’t bind him in any way to sell the vessel, it just lets him put him[self] in a place where he was before?
MR. O’ DWYER [Counsel for Rebco]:
That’s right.

THE COURT:

Oh, then—
MR. O’DWYER [Counsel for Rebco]:
That’s exactly right.

THE COURT:

— and then the contract would be subjected to meanings which would be frivolous and useless and the law says we can’t do that. I mean, you know, it’s just, I’m sorry. That’s my ruling.
|9The trial court provided extensive written reasons for its decision. Regarding the issue of whether the contract was ambiguous, the court stated:
Whether a contract is ambiguous or not is a question of law. Aycock v. Allied Enterprises, Inc., 517 So.2d 303 (La.App. 1st Cir.1987), writs denied, 518 So.2d 512, 513 (La.1988).
This Court finds that the contract between the parties dated December 28, 1995, is unambiguous as a matter of law, and there is no need of parol evidence to explain its terms. Since the interpretation of the contract relative to parol evidence is an evidentiary matter, state law controls. However, it makes no difference whether or not Louisiana law is used or the federal common law is applied, the rules are basically the same. Ambiguity is a question of law and parol evidence is not admissible to interpret an unambiguous contract. See, United States v. Johnson [,] 43 F.3rd 1308 (9th Cir.1995).
Upon examination of the contract provision at issue, we disagree with the contention of Rebstock Marine and Rebco; i.e., that the cited contract provision contained a suspensive condition that depended upon the whim of the “prospective seller”, Reb-co, and its president, Raymond Rebstock. The trial court examined the subject provision and concluded that the contract was valid, enforceable, and its meaning unambiguous. Plaintiffs had the right to purchase the M/V BOB R. for $50,000.00. We find no error in the trial court’s ruling. This assignment of error is without merit.
In their second assignment of error, Rebstock Marine and Rebco contend that if the contingent agreement on possible purchase of the M/V BOB R. was ambiguous, and the intent of the parties unclear, then, and in that event, the trial court was required to interpret the agreement against plaintiffs, whose lawyer drafted the agreement. In support of this contention, Rebstock Marine and Rebco cite this court’s opinion in Dohoney v. Louisiana Casino Cruises, Inc., 95-1570, p. 4 (La.App. 1 Cir. 2/23/96), 671 So.2d 537, 540, writ denied, 96-0729 (La.5/3/96), 672 So.2d 690, for the proposition that any ambiguity in an agreement must be interpreted against the party who prepared it.
While we agree that Dohoney sets forth a well-established principle of Louisiana law, we have heretofore concluded that the trial court did not err in its determination that the contract was valid, and enforceable, and that its meaning was unambiguous. This assignment of error is similarly without merit.
ImThe next error raised by Rebstock Marine and Rebco questions whether the “contingent agreement regarding the possible purchase” of the M/V BOB R. was revoked by Mr. Rebstock prior to the point that the suspensive conditions were met. In brief, Rebstock Marine and Rebco ar *783 gue that the provision regarding the sale of the M/V BOB R. was nothing more than an offer to sell. Rebstock Marine and Rebco further contend that following the meeting between Mr. Rebstock and the plaintiffs in late 1996 or early 1997, it was clear to all that Mr. Rebstock was not interested in selling the M/V BOB R. for $50,000.00. Accordingly, it is the position of Rebstock Marine and Rebco that Mr. Rebstock revoked any offer to sell the M/V BOB R. well in advance of the occurrence of any suspensive condition.
Plaintiffs assert that the December 28, 1995 agreement was clearly an option to purchase. It is the position of the plaintiffs that said agreement did not constitute an offer to sell that could be revoked by Mr. Rebstock and/or Rebco.
In its reasons for judgment, the trial court characterized the December 28, 1995 agreement as a “contract ... relative to a lease and option to purchase the supply vessel ‘ELEANORA’, and an option to purchase the vessel ‘BOB R.’ ” Based upon our review of the agreement at issue, we find no error with this holding.
In their next assignment of error, Rebstock Marine and Rebco contend that the district court erred in dismissing their Third Amended Reconventional Demand for reimbursement or setoff of the sums expended by them on the repair and refurbishment of the M/V BOB R. The district court found the third party and reconven-tional demands filed by Rebstock Marine and Rebco to be without merit and directed that these demands be dismissed at their cost.
On appeal, Rebstock Marine and Rebco assert that plaintiffs would be ‘unjustly enriched’ if this court were to affirm the district court’s judgment that directed Rebco to sell the M/V BOB R. to plaintiffs for the sum of $50,000.00. Rebstock Marine and Rebco further assert that $575,046.51 was spent refurbishing the M/V BOB R. It is undisputed that these repairs were undertaken after the parties signed the December 28,1995Inagreement and after plaintiffs notified Rebco in late 1996 or early 1997 that they wanted to exercise their option.
In their brief to this court, Rebstock Marine and Rebco rely on Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (La.1967) and Edwards v. Conforto, 636 So.2d 901 (La.1993) as support for their argument that plaintiffs would be ‘unjustly enriched’ if they were permitted to acquire the M/V BOB R. for the sum of $50,000 .00. In Minyard, and more recently in Edwards, our supreme court recognized the civil law actio de in rem verso inherent in the Louisiana Civil Code of 1870,[4] and set forth five prerequisites to a successful suit: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of justification or legal cause for the enrichment and impoverishment, and lastly, (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature. Edwards, 636 So.2d at 903; Minyard, 251 La. at 632, 205 So.2d at 432.
Additionálly, current civil code article 2298 speaks of ‘enrichment without cause’ and provides in pertinent part:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term “without cause” is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.
La. Civ. Code art. 2298 (emphasis supplied).
At the trial of this matter, the trial court refused to allow counsel for Rebco to introduce evidence regarding the amount spent on refurbishment of the M/V BOB R. Counsel for Rebco nevertheless presented *784 evidence via proffer that $575,046.51 was expended for this purpose. Based upon the testimony adduced at trial, it is evident that the repairs in question were commenced following the meeting in late 1996 or early 1997, where plaintiffs advised Mr. Rebstock that they intended to exercise their option to purchase the M/V BOB R. for the sum of $50,000.00. The record further reflects that the h ¿majority of these repairs had not been completed at the time plaintiffs filed the instant suit on March 19,1997.
Rebstock Marine and Rebco concede in brief that at the time the December 28, 1995 agreement was executed and prior to its refurbishment, the M/V BOB R. was little more than a “rusting and wasting hulk.” Rebstock Marine and Rebco argue that there is absolutely no justification for the plaintiffs’ enrichment, and that plaintiffs should not be entitled to a “windfall” as a result of the repairs made to the M/V BOB R.
We disagree. Clearly the justification or legal cause for the plaintiffs’ enrichment was the December 28, 1995 agreement. Under both the jurisprudence and Article 2298, the lawful terms of the contract previously entered into between the parties precludes Rebstock Marine and Rebco from recovering now under a theory of unjust enrichment. Additionally, it is evident from the record that Rebco and/or Mr. Rebstock undertook extensive repairs to the M/V BOB R. after plaintiffs expressed their intention to exercise their option to purchase the then “rusting and wasting hulk” for the agreed upon price of $50,000.00.
The provisions of our law contemplate that parties to a contract will perform their respective obligations in good faith. La. Civ.Code art. 1983. Any pecuniary loss sustained by Rebco and/or Mr. Reb-stock resulted solely from Mr. Rebstock’s efforts to avoid compliance with the terms of the December 28, 1995 agreement. This court also takes note of the fact that any monetary loss allegedly sustained by Rebco and/or Mr. Rebstock in connection with the extensive repair of the M/V BOB R. must be balanced against Rebco and/or Mr. Rebstock’s lease of the vessel for bareboat charters during the pendency of this litigation. Accordingly, we find this assignment of error to be without merit.
In their fifth and final assignment of error, Rebstock Marine and Rebco assert that the district court erred in ordering specific performance in plaintiffs’ action for declaratory judgment. In support of this assertion, Rebstock Marine and Rebco cite J. Weingarten, Inc. v. Northgate Mall, Inc., 404 So.2d 896 (La.1981) for the proposition that
| ¶ 3[although specific performance is the preferred remedy for breach of a contract it may be withheld by the court when specific relief is impossible, when the inconvenience or cost of 'performing is greatly disproportionate to the damages caused, when the obligee has no real interest in receiving performance, or when the latter would have a substantial negative effect on the interests of third parties.
J. Weingarten, Inc., 404 So.2d at 897 (emphasis added by Rebstock Marine and Rebco).
Rebstock Marine and Rebco contend on appeal
that the cost of performance in this case would be greatly disproportionate and inequitable if defendants/appellants are ordered to deliver the M/V BOB R[.] to plaintiffs for the sum of $50,000, after Mr. Rebstock has invested $575,046.51 refurbishing the vessel, which now has a fair market value of $845,500.
Rebstock Marine and Rebco further claim that in the event this court were to affirm the district court’s grant of specific performance, then, and in that event, plaintiffs should be directed to justly compensate Mr. Rebstock and Rebco for the cost of refurbishment of the M/V BOB R.
The question presented in J. Weingarten, Inc. was whether the court should *785 specifically enforce a lease provision and order the destruction of a major part of a $4,000,000.00 building that the defendant-shopping center developer erected in an area reserved to the plaintiff-tenant for customer parking. The supreme court reversed the court of appeal and held:
In view of the great disparity between the cost of specific relief and the damages caused by the contractual breach, the magnitude of the economic and energy waste that would result from the building’s destruction, the substantial hardship which would be imposed on individuals who are not parties to the contract or to this litigation, and the potential negative effect upon the community, the circumstances and nature of this case do not permit specific performance.
J. Weingarten, Inc., 404 So.2d at 897.
Plaintiffs respond by pointing out that the circumstances and factors set forth in J. Weingarten, Inc. are not present in the instant matter. Distinguishing the facts presented in J. Weingarten, Inc. from the facts of the instant case, plaintiffs argue that the rights of third parties are not at issue in the instant matter. Plaintiffs further argue that “[a]ny inequities that would or could result from specific performance were and are inequities that Rebco Marine has clearly brought upon itself when it wilfully [sic] and [^knowingly defied and ignored the clear and unambiguous terms and provisions of the December 28,1995 contract.”
In its reasons for judgment, the trial court stated:
Since this is a suit for a declaratory judgment filed pursuant to La. C.C.P. art. 1871, et seq., its purpose is to determine the rights of parties to a written contract by resolving questions of the proper construction of the contract. La. C.C.P. art. 1872.... The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. State, Department of Transportation & Development v. Sugarland Ventures, Inc., 476 So.2d 970 (La.App. 1st Cir.), writ denied, 478 So.2d 909 (La.1985).
The trial court further held:
This Court finds that the case of the plaintiff is well founded and grants its petition for declaratory judgment, declaring the contract which is the subject of this suit to be valid and enforceable, and finding it has not been breached. The plaintiff has the right to purchase the vessel “BOB R” for the sum of $50,000. The defendant must deliver to the plaintiff clear title to the “BOB R”. The defendant breached the contract by his failure to convey the “BOB R”.
Rebstock Marine and Rebco contend “ordering Mr. Rebstock and his corporation to deliver the M/V BOB R to [plaintiffs] is beyond the scope of a declaratory judgment action, and that portion of the judgment must be reversed.” We disagree. A. reading of the trial court’s judgment and reasons for judgment indicates that the trial court found the contract between the parties to be valid and enforceable. The trial court properly established the right of plaintiffs to purchase the M/V BOB R. for $50,000.00 and the corresponding obligation of Mr. Rebstock and Rebco to deliver clear title to the vessel. We find no error in this determination.
The alternative contention of Rebstock Marine and Rebco, i.e., that this court should direct plaintiffs to compensate Mr. Rebstock and Rebco for their refurbishment of the M/V BOB R., appears to be an outright reversal of their previous position relative to the scope of an action for declaratory judgment. This contention similarly lacks merit. To order the plaintiffs to compensate Mr. Rebstock, a non-party, and Rebco is beyond the scope of this action for declaratory judgment. Nevertheless, we note that the parties do not dispute that at the time the December 28, 1995 agreement was signed, the offshore *786 oil industry was in the midst of an economic slump, and the M/V BOB R. was a “rusting |1fiand wasting hulk.” The offshore oil industry subsequently recovered; and after plaintiffs sought to exercise their option, Mr. Rebstock and/or Rebco undertook repair of the vessel. These repairs continued even after plaintiffs filed the instant litigation. In the opinion of this court, it would be inequitable to direct plaintiffs to compensate Mr. Rebstock and/or Rebco for those repairs they unilaterally elected to make.
CONCLUSION
For the above and foregoing reasons, the trial court’s judgment is hereby affirmed. Plaintiffs, Wiley J. Falgout, Aldon G. Wahl, Jr., and Tony G. Bruce, d/b/a MKM, L.L.C. have the right to purchase the M/V BOB R. for the sum of $50,000.00. The defendant, Rebco Marine, Inc., must deliver to plaintiffs clear title to the M/V BOB R., all as more fully set out in the agreement dated December 28, 1995. All costs associated with this appeal shall be borne by defendants, Rebstock Marine and Rebco.
AFFIRMED.

. Mr. LeBouef died shortly thereafter.

. The principals of MKM, L.L.C., namely Wiley J. Falgout, Aldon G. Wahl, Jr. and Tony G. Bruce, d/b/a MKM, L.L.C., assert that after the execution of the agreement and the filing of this lawsuit, they learned that MKM, L.L.C. was never duly organized. Although Articles of Organization were executed and submitted to the Louisiana Secretary of State for filing, said documents were later returned due to the fact that the name “MKM, L.L.C.” was not *780 available. The principals' now-deceased attorney purportedly failed to apprise them of this fact. Later, on May 7, 1997, the principals formed "KMM Marine, L.L.C.” ostensibly for the purpose of providing the principals with future liability protection.

. La. Civ.Code art. 1965 (1870).