LMcCLENDON, J.
This is an appeal by an insurer from a declaratory judgment setting forth the rights and responsibilities of parties to this action under various judgments. For the following reasons, we amend in part and affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiffs in this consolidated matter filed suit against the City of Baton Rouge and Parish of East Baton Rouge (City/Parish), its insurers and other individuals for wrongful entry and damage to plaintiffs’ property in connection with the digging of drainage canals.[2] The insurers were The Fidelity and Casualty Company of New York (F & C), now CNA Insurance Company, and Chicago Insurance Company (Chicago).[3]
Judgment was originally signed by the trial court on January 26, 1995, in favor of plaintiffs and against the City/Parish and other defendants, but finding no coverage under the provisions of the policies of insurance of F & C and Chicago. Thereafter, several defendants, including the City/Parish, filed a Motion for New Trial and Judgment Notwithstanding the Verdict, and, on September 12, 1995, the trial court signed an amended judgment. In its amended judgment, the trial court reversed its earlier ruling that neither insurer provided coverage to those defendants cast in judgment, finding that both F & C and Chicago provided coverage for the defendants cast. The amended judgment was appealed to this Court, which, after some adjustments to the property damage awards, upheld the trial court judgment. The judgment, as affirmed by this Court, ordered defendants to pay damages to *12 plaintiffs, including property damage and mental anguish, in an amount exceeding $1,000,000.00, plus attorney fees, expert witness fees, and costs. Williams v. City of Baton Rouge, 96-0675, 96-0676 (La.App. 1 Cir. 4/30/98), 715 So.2d 15.
The City/Parish and Chicago, but not F & C, sought writs to the Louisiana Supreme Court, which were granted. Williams v. City of Baton Rouge, 98-1981, 98-2024 (La.11/25/98), 729 So.2d 579. The supreme court reduced the amount of the principal damage award to $460,970.09 and released Chicago from all liability. Williams v. City of Baton Rouge, 98-1981, 98-2024 (La.4/13/99), 731 So.2d 240.
Following this Court’s decision, but pri- or to the decision of the supreme court, F & C, on September 29,1998, deposited into the registry of the United States District Court for the Middle District of Louisiana, the sum of $1,025,745.47, an amount it contends satisfies its obligations under the judgment.[4]
The parties, seeking a judicial declaration of their rights and responsibilities under these judgments, filed a joint motion for declaratory relief on September 28, 1999.
Action of the trial court
An evidentiary hearing on the Motion for Declaratory Relief was held on June 11, 2001, and a decision rendered in open court on July 9, 2001. Judgment was signed on October 16, 2001.
With regard to F & C, the trial court held:
1) That F & C could not benefit from the holding of the Louisiana Supreme Court reducing the total damage award to plaintiffs, as F & C did not seek relief from the judgment of the court of appeal and it is bound by that judgment. Therefore, F & C is liable for its policy limits of $400,000.00, plus attorney fees of $45,000.00, expert fees of $19,500.00 and costs, plus legal interest as shown below.
lfi2) That F & C is liable for legal interest on its policy limits ($400,000.00) from the date of judicial demand until date of judgment, and for legal interest on the entire amount of the Court of Appeal judgment ($1,087,470.09, including attorney fees and expert fees) from date of judgment until full and effective tender by F & C of “that part of the judgment which does not exceed [F & C’s] liability thereon” as provided in the supplemental payment clause of the F & C policy.
3) That F & C is entitled to a credit of $1,025,745.47 for the funds deposited into the registry of the federal court on September 29,1998.
4) That, since LSA-C.C. art. 1866 requires that the funds tendered be allocated first against the interest due at that time, and since the remaining funds were not enough to cover the principal damages due, the stipulated $126,177.81 shortage consisted entirely of principal liability. Accordingly, because F & C’s contractual obligations were not met, legal interest continues to inn against F & C “on the entire amount of any judgment therein” as provided for in the supplemental payment clause of the F & C insurance policy, until full and complete payment, tender or deposit is made.
It is from this declaratory judgment that F & C has appealed.[5]
*13 ASSIGNMENTS OF ERROR
F & C has raised five assignments of error:
1) The trial court erred in ruling that F & C could not benefit from the supreme court’s reduced judgment against F & C’s insured, and that F & C is liable for the original 1995 judgment;
2) The trial court erred in ruling that F & C is liable for interest on the original 1995 judgment rather than on the final judgment amount rendered in 1999 by the | fiSupreme court against F & C’s insured;
3) The trial court erred in ruling F & C liable for post-judgment interest after it deposited into the registry of the court its policy limits, costs, and pre-judgment interest on its policy limits;
4) The trial court erred in relying on LSA-C.C. art. 1866 to determine the application of F & C’s deposit; and
5) The trial court erred in allowing a shortfall in the deposit of accrued post-judgment interest to trigger the accrual of additional interest on the entire judgment amount.
DISCUSSION
Declaratory Judgments
Under the declaratory judgment articles of the Code of Civil Procedure, a court has the jurisdiction to declare rights, status, and other legal relations whether or not further relief is or could be claimed. LSA-C.C.P. art. 1871. The purpose of the articles is to settle and afford relief from uncertainty and insecurity with respect to those rights, status and other legal relations, and the articles should be liberally construed and administered. LSA-C.C.P. art. 1881. A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute. State, Department of Transportation and Development v. Sugarland Ventures, Inc., 476 So.2d 970, 973 (La.App. 1 Cir.), writ denied, 478 So.2d 909 (La.1985); Duplantis v. Louisiana Board of Ethics, 2000-1750, pp. 11-12 (La.3/23/01), 782 So.2d 582, 599 (Calogero, C.J., dissenting). The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. ANR Pipeline Co. v. Louisiana Tax Commission, 2001-2594, p. 9 (La.App. 1 Cir. 3/20/02), 815 So.2d 178, 185; MKM, L.L.C. v. Rebstock Marine Transportation, Inc., 99-0431, p. 14 (La.App. 1 Cir. 9/7/00), 773 So.2d 776, 785, writ denied, 2000-2797 (La.12/8/00), 776 So.2d 460; State, Department of Transportation and Development v. Sugarland Ventures, Inc., 476 So.2d at 974.
Standard of Review
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993); MKM, L.L.C. v. Rebstock Marine Transportation, Inc., 99-0431 at p. 7, 773 So.2d at 781.
*14 Assignments of Error One and Two
During the time of the excavation project, the City/Parish was insured by F & C under a commercial liability policy, in excess of the City/Parish’s $100,000.00 self-insurance retention. F & C’s policy limits were $400,000.00. The trial court determined that the City/Parish did not willfully commit a crime and, thus, exclusionary language in the F & C policy did not preclude coverage. This Court on appeal found no error in the trial court’s determination that the F & C policy provided coverage for all items of damages (in excess of the $100,000.00 self-insurance retention), which plaintiffs sustained due to the City/Parish’s actions. This Court further upheld the decision of the trial court finding Chicago provided excess coverage for all remaining damages over $500,000.00. Williams v. City of Baton Rouge, 96-0675, pp. 23-28 (La. 1 Cir. 4/30/98), 715 So.2d 15, 34-37.
The City/Parish and Chicago both filed writ applications with the Louisiana Supreme Court. The supreme court reduced the damage award and held that the |sexcess insurance policy of Chicago did not provide coverage, finding the City/Parish’s acts intentional. F & C did not file a writ application.
Therefore, and as stated by the supreme court, when F & C did not file a writ application, the lower courts’ finding that the City/Parish is covered under the F & C policy became final. Williams v. City of Baton Rouge, 98-1981, 98-2024, p. 18 (La.4/13/99), 731 So.2d 240, 252.
F & C contends, however, that it should benefit from the reduction of judgment against its insured.[6] F & C argues that the supreme court only acknowledged that the judgment is final as to coverage under the F & C policy, and that, according to the terms of its policy, it cannot be cast in judgment for a greater amount than that of its insured. F & C’s argument is without merit.
When a court renders a judgment that decides the merits of the case in whole or in part, the judgment is a final judgment. LSA-C.C.P. art. 1841. A final judgment is conclusive between the parties except on appeal or direct review. LSA-R.S. 13:4231. In Avenue Plaza, L.L.C. v. Falgoust, 96-0173, p. 4 (La.7/2/96), 676 So.2d 1077, 1079, the Louisiana Supreme Court stated as follows: “A final judgment from which there can be no appeal acquires the authority of the thing adjudged. La. C.C. art 3506(31). Once a final judgment acquires the authority of the thing adjudged, no court has jurisdiction to change the judgment, regardless of the magnitude of the final judgment’s error. Tolis v. Board of Supervisors of Louisiana State University, 95-1529, pp. 2-3 (La.10/16/95), 660 So.2d 1206, 1206-07.”[7] See also Dupre v. Floyd, 2001-2399, p. 4 (La.App. 1 Cir. 7/1/02), 825 So.2d 1238, 1241 (per curiam).
19Thus, an appellate court cannot amend a judgment in favor of a party who has neither appealed nor complained by way of an answer to the appeal and it is improper to reduce a damage award in favor of a party who doesn’t seek review. Blair v. Tynes, 621 So.2d 591, 601 (La. *15 1993); Blasingame v. Anderson, 236 La. 505, 108 So.2d 105, 110 (1959).
In Ridenour v. Wausau Insurance Company, 627 So.2d 141 (La.1993), the plaintiff filed suit against her automobile insurer seeking to recover under the policy’s uninsured motorist coverage following injuries she received in a motorcycle accident. State Farm, the insurer, appealed the trial court’s decision to impute a $10,000.00 tender to interest. The court of appeal amended the judgment and the insured sought writs to the supreme court. State Farm did not. The supreme court remanded the case to the trial court to determine what portion of the tender should be applied to accrued interest. The court stated:
State Farm did not apply for writs to this court from the court of appeal’s judgment; therefore, that judgment is final as to State Farm. For this reason, in the event the trial judge should find that the amount due is actually less than the amount State Farm was required to pay under the court of appeal judgment, he may not reduce [the insured’s] award below this level.
Ridenour v. Wausau Insurance Company, 627 So.2d at 143.
F & C contends, however, that the case of Parker v. Depriest, 94-0513 (La. 1 App. Cir. 12/21/95), 666 So.2d 433, writs denied, 96-0202, 96-0218 (La.4/8/96), 671 So.2d 335, allows an appellate court to amend a judgment even as to a non-appealing party. The facts of Parker v. Depriest, however, are clearly distinguishable from the present case, as it involved regulatory commission bonds and an indemnity agreement. Additionally, the court specifically determined that the bonds were not construable as liability insurance, and thus could not create a basis for rendering a judgment against the appellant trailer owner. The court recognized that the surety on the trailer owner’s regulatory commission bonds, |inneither appealed nor answered the appeal of plaintiff and stated that, ordinarily, a court may not grant relief to such a non-complaining party. LSA-C.C.P. art. 2133. But under these particular circumstances, because the appellant trailer owner was aggrieved by the judgment against the surety, the judgment against the appellant could not be effectively reversed without reversing as to the surety.
F & C’s failure to seek relief from the court of appeal judgment makes it bound by that judgment. The F & C judgment, having acquired the authority of the thing adjudged, became final as to F & C. Therefore, F & C cannot benefit from the reduced supreme court judgment. See Nunez v. Commercial Union Insurance Company, 2000-3062, p. 2 (La.2/16/01), 780 So.2d 348, 349 (per curiam). F & C’s first assignment of error is without merit.[8]
Further, because F & C cannot benefit from the supreme court’s reduced judgment against its insured, it clearly cannot benefit from the 1999 judgment and be held liable for interest on that reduced judgment, instead of the court of appeal judgment. F & C’s second assignment of error is similarly without merit.
Assignments of Error Three and Four
F & C next contends that it deposited into the registry of federal court its policy limits, costs, and pre-judgment interest on its policy limits, and therefore the trial court erred in ruling that it is *16 liable for further post-judgment interest. F & C also avers that the trial court erred in relying on LSA-C.C. art. 1866 for the application of the deposit.
LSA-R.S. 13:4208 provides:
Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, “ex delicto”, which may be rendered by any of the courts.
|nUnder LSA-R.S. 13:4203, all liability carriers owe interest on judgments in tort cases, up to their policy limits, from the date of judicial demand. Any policy provision which attempts to limit an insurer’s liability for legal interest on the policy limits contravenes the public policy of LSA-R.S. 13:4203. Martin v. Champion Insurance Company, 95-0030, p. 5 (La.6/30/95), 656 So.2d 991, 995; Hedgepeth v. Guerin, 96-1044, p. 16 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355, 1365, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983. However, this statutory provision does not prohibit insurers from limiting or extending their liability for interest on excess judgments. Insurers utilize supplemental payment provisions to outline their obligations with regard to interest. Thus, to determine an insurer’s interest obligation on an excess judgment, we must refer to the supplemental payment provisions contained in the applicable insurance contract. Martin v. Champion Insurance Company, 95-0030 at pp. 5-6, 656 So.2d at 995; Hedgepeth v. Guerin, 96-1044 at p. 16, 691 So.2d at 1365.
Under the Supplementary Payments section of the F & C policy, F & C has obligated itself to pay “in addition to the applicable limit of liability” the following:
(a) all expenses incurred by [F & C], all costs taxed against the insured in any suit defended by [F & C] and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before [F & C] has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of [F & C’s] Lability thereon....
The supplemental pay provision in this case is the same as that in the Hedgepeth v. Guerin case. Hedgepeth recognized the jurisprudence interpreting similar supplemental pay clauses, stating that the courts have consistently held that, under these supplemental pay clauses, the insurer intended to provide its insured with supplemental protection for all interest and costs on the entire judgment |12which accrues after entry of judgment. (Citations omitted). Hedgepeth v. Guerin, 96-1044 at pp. 16-17, 691 So.2d at 1365.[9]
In order for F & C to be relieved of the obligation of paying additional interest on the judgment in favor of plaintiffs, it was incumbent upon F & C to tender the actual amount owed. See Inabinet v. State Farm Auto. Insurance Company, 262 So.2d 920, 923 (La.App. 1 Cir.1972). F & C contends that its deposit into the registry of the federal court did just that, terminating its obligations, including that of post-judgment interest. The City/Parish argues, however, that F & C owes post-judgment interest on the entire judgment, and the tender, an amount in excess of the sum of its policy limits, pre-judgment interest and costs, was not sufficient to satisfy accrued post-judgment interest.
The imputation of interest is governed by LSA-C.C. art. 1866, which provides:
*17 An obligor of a debt that bears interest may not, without the obligee’s consent, impute a payment to principal when interest is due.
A payment made on principal and interest must be imputed first to interest.
This article is found in Title III of Book III of the Civil Code, which is entitled “Obligations in General”. LSA-C.C. art. 1757, which is also included in Title III, provides that obligations can arise from contracts as well as from the law, as in instances of wrongful acts. Thus, an offense or quasi offense under LSA-C.C. arts. 2315 et seq. creates an obligation on the part of the wrongdoer in favor of the injured party. Payton v. Colar, 518 So.2d 1104, 1106 (La.App. 4 Cir.1987). In this case, the supreme court clearly agreed with the lower courts that the City/Parish was a bad faith trespasser and is hable for ah resulting damages under LSA-C.C. art. 2315.
11sThis Court has found the meaning of article 1866 to be clear and unequivocal. Magee v. Landrieu, 95-0437, 95-0438, 95-0474, p. 12, (La.App. 1 Cir. 3/17/95), 653 So.2d 62, 68, writs denied, 95-0790, 95-0800, 95-0805, 95-0870 (La.4/21/95), 654 So.2d 319, 320. The deposit made in federal court was clearly a payment made on principal and interest which under article 1866 must be first imputed to interest.[10] Thus, we find no error in the trial court’s determination that LSA-C.C. art. 1866 requires that ah payments made by F & C be applied first to the interest owed, and thereafter to the reduction of the principal.
Furthermore, we find unpersuasive F & C’s argument that LSA-C.C. art. 1866 and the supplemental pay provision are in conflict. We agree with F & C that its policy provides that post-judgment interest no longer accrues after the insurer deposits or tenders its policy limits. F & C’s tender on September 29, 1998, however, did not accomplish that. Applying LSA-C.C. art. 1866, F &' C’s deposit first went to interest then to principal, resulting in the underpayment of principal (the policy limits). F & C has stipulated and agreed, in the event its other assignments of error were determined to be without merit as they have been, that the amount it should have deposited as of September 29, 1998, in order to fully satisfy the judgment against it was in the amount of $1,151,923.28. F & C actually tendered $1,025,745.47. The trial court determined that the stipulated shortfall, in the amount of $126,177.81, consisted entirely of principal liability. We find no error in this factual finding. Accordingly, on September 29, 1998, the date of the deposit into the registry of the federal court, there was a shortfall of $126,177.81 and, despite its tender, F & C is liable for post-judgment interest, according to the terms of its policy.
I uAssignment of Error Five
Having determined that post judgment interest continues to accrue because of the shortfall in principal, the only remaining issue is whether interest, after September 29, 1998, continues to run on the entire amount of the court of appeal judgment or whether it accrues on the shortfall only.
The insurer, by its supplemental payments clause agreeing to pay interest upon the entire amount of a judgment in excess of policy limits, intended to provide supplemental protection to its insured over the principal amount plus legal interest thereupon covered by its policy. See Doty v. *18 Central Mutual Insurance Company, 186 So.2d 328, 386 (La.App. 3 Cir.) (per curiam), writ refused, 249 La. 486, 187 So.2d 451 (1966). Thus, the trial court did not err in finding F & C liable for legal interest on its policy limits from the date of judicial demand until date of judgment, and for legal interest on the entire amount of the court of appeal judgment from date of judgment until full and effective tender by F & C of that part of the judgment which does not exceed F & C’s liability thereon as provided in the supplemental payment clause of the F & C policy. Such a provision prevents the insured from being prejudiced by the delay in payment of the judgment, which delay is solely within the control of the insurer. Doty v. Central Mutual Insurance Company, 186 So.2d at 334.
In this matter, the court of appeal judgment was rendered on April 30, 1998, and F & C made its tender in federal court on September 29, 1998. At the time of the tender, interest was calculated on the entire judgment, in accordance with F & C’s policy provisions. The tender in effect satisfied interest which accrued up to September 29, 1998, and the remaining amount of the tender served to reduce the principal amount of $400,000.00 (the policy limits). Legal interest on the reduced amount of $126,177.81, therefore, began to run anew from the date of the tender |1B(September 29, 1998) and continues until the date the judgment is satisfied. See Ridenour v. Wausau Insurance Company, 627 So.2d at 143.[11]
CONCLUSION
For the foregoing reasons, the October 16, 2001 judgment of the trial court is amended to award legal interest on the stipulated shortfall of the policy limits in the amount of $126,177.81, from September 29, 1998, until paid. In all other respects, the judgment is affirmed. All costs are assessed against appellant, The Fidelity and Casualty Company, now CNA Insurance Company.
AMENDED, AND AS AMENDED, AFFIRMED.

. Plaintiffs are comprised of three families, owners of three adjoining tracts of land on Staring Lane in Baton Rouge, Louisiana: the Williams family, the Gage family, and the Raby family. The excavation project, performed by the Department of Public Works, began on January 6, 1984, and continued for one to two months thereafter.

.The petition incorrectly named Chicago as Chicago Fire Insurance Company.

. F & C instituted a federal interpleader action in the United States District Court for the Middle District of Louisiana in September 1998.

. Although both sets of plaintiffs have answered the appeal, asserting that the trial court judgment was in error in that the declaratory judgment reduced F & C’s liability for pre-judgment legal interest from that *13 awarded in the original trial court judgment of January 26, 1995, this error was not briefed on appeal. Pursuant to Rule 2-12.4, Uniform Rules, Courts of Appeal, this error has been abandoned. Day v. South Line Equipment Company, 551 So.2d 774, 779, n. 7 (La.App. 1 Cir.), writ denied, 553 So.2d 474 (La.1989). Additionally, the Williams plaintiffs argue in brief that the ruling of the trial court in its declaratory judgment is accurate and should be affirmed.

. It is doubtful that if an award was increased rather than decreased on appeal, that the insurer would argue that it should be bound by the higher amount.

. LSA-C.C. art. 3506(31) was repealed by Acts 1999, No. 503, § 1. It read as follows:
31. Thing Adjudged.—Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.

. Also, when the judgment of the court of appeal was rendered against F & C, its insured was bound by that judgment as well. At that time, F & C was cast in judgment for no more than that of its insured. But, again, since F & C did not apply for writs, the court of appeal judgment became final as to F & C.

. We interpret the "entire amount of any judgment” referred to in the supplemental pay provision to be the final judgment rendered against F & C, from which it took no appeal.

. None of the parties contend that there was creditor consent to impute the payment in any other manner.

. The Ridenour case, 627 So.2d 141, at footnote 4, gave the following example:
For example, assuming $6,000 in interest was 'due between July 9, 1981 and December 17, 1986, $6,000 of the tender would go to interest and the remaining $4,000 would serve to reduce the principal amount from $45,000 to $41,000. Interest would then run on the $41,000 from December 17, 1986 until paid.