Dear Ms. West:
You advise this office that the St. Landry Parish Government operates under the provisions of a home rule charter, as of January, 2004. On behalf of Mr. Don Menard, Parish President of the St. Landry Parish Government, you ask for the opinion of this office regarding Mr. Menard's legal ability, in his capacity as parish president, to file a suit for declaratory judgment addressing the authority of the parish government to abolish certain road works districts currently operating in St. Landry Parish.
I. FACTUAL BACKGROUND
In La. Atty. Gen. Op. 08-0201, issued to the District Five Road and Public Works Commission of St. Landry Parish, this office stated that the question of whether a road district can be abolished by the parish governing authority depends on whether the road district was created by the legislature or by the local governing authority. The author of Opinion 08-0201 noted that "Road District No. 5 was specifically created as a political subdivision of the state by the legislature by La.R.S.48:600.1." Road Districts Four, Six, Eleven and Three also operate in St. Landry Parish; these road districts were also created by the legislature. See La.R.S. 48:600, La.R.S. 48:600.2, La.R.S. 48:600.3, and La.R.S. 48:600.4. *Page 2 
In Opinion 08-0201, this office concluded that ". . . a road district created by the legislature is a political subdivision of the state and cannot be abolished by local government and the taxes taken over by the local government . . . as a political subdivision of the state, having been created by the legislature, it can only be abolished by the legislature." The author of Opinion 08-0201 cited as authority La. Atty. Gen. Op. 01-17, also addressed to the District Five Road and Public Works Commission of St. Landry Parish, advising that "as a political subdivision of the state, having been created by the legislature, [Road Works District Five] can only be abolished by the legislature." Further, in La. Atty. Gen. Op. 06-0197, again addressed to the District Five Road and Public Works Commission of St. Landry Parish, this office affirmed Opinion 01-17.
The author of Opinion 08-0201 acknowledged that, in contrast to those road districts which were specifically created by legislation, St. Landry Parish also has some road districts which were created by the local governing authority. As advised in Opinion 08-0201, when a road district is created by the local governing authority, the governing authority has the power to abolish the district, pursuant to La.Const. art. VI § 15, which provides:
 The governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency.
The St. Landry parish president disagrees with the analysis rendered in Opinions 08-0201 and 01-17, and as affirmed in Opinion 06-0197, instead arguing that, as a home rule charter entity, the St. Landry Parish Government has the authority to alter, abolish, or assume the administrative duties of those road works districts which were created by the legislature. The parish president wants the parish government to file a lawsuit seeking a judicial declaration regarding the issue; however, the parish council is not aligned with the parish president in this regard. This scenario has prompted the current inquiry to this office, regarding the legal ability of Mr. Menard, acting in his capacity as parish president, to bring this suit for declaratory judgment, without the approval of the parish council.
II. SUIT FOR DECLARATORY JUDGMENT
Louisiana Code of Civil Procedure art. 1871 sets forth the scope of an action for declaratory judgment. Art. 1871 authorizes the judicial declaration of "rights, status, and other legal relations whether or not further relief is or could be claimed." The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. ANR Pipeline Co. v. Louisiana Tax Commission, *Page 3 
2001-2594 (La.App. 1 Cir. 3/20/02), 815 So.2d 178, 185; MKM, L.L.C. v.Rebstock Marine Transportation, Inc., 99-0431 (La.App. 1 Cir. 9/7/00),773 So.2d 776, 785, writ denied, 2000-2797 (La. 12/8/00), 776 So.2d 460.
Louisiana Code of Civil Procedure art. 1872 governs those persons entitled to bring an action for a declaratory judgment:
 A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder.
The term "person" under Article 1872 includes a "body of persons" pursuant to La.R.S. 1:10, which provides:
 § 10. Person, defined
 Unless it is otherwise clearly indicated, the word "person" includes a body of persons, whether incorporated or not.
In Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697 (La. 1993), the Louisiana Supreme Court expounded on the law applicable to declaratory judgments as follows:
 Louisiana Code of Civil Procedure art. 1871 authorizes the judicial declaration of "rights, status, and other legal relations whether or not further relief is or could be claimed." Article 1872 designates who can bring such an action:
 A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder.
 The jurisprudence has restricted the application of the articles in that courts will only act in cases of a present, justiciable controversy and will not render merely advisory opinions. Hainkel v. Henry, 313 So.2d 577, 578 (La. 1975). In fact, the constitution implicitly prohibits the rendering of advisory opinions. Aucoin v. Dunn, 255 La. 823, 233 So.2d 530, 531 (1970); Belsome v. Southern Stevedoring, Inc., 239 La. 413, 118 So.2d 458, 461 (1960); State v. Fant, 216 La. 58, 43 So.2d 217, 220 (1949).
 In State v. Board of Supervisors, 228 La. 951, 84 So.2d 597, 599-600 (1955) this court discussed the effect on Louisiana law of the *Page 4 
Uniform Declaratory Judgments Act, the precursor to the articles on declaratory judgment in the Code of Civil Procedure.
 Ever since 1810, it has been fundamental in the law of Louisiana that courts sit to administer justice in actual cases. . . . This principle has been strictly adhered to throughout the years and, in reality, is determinative of the matter of the jurisdiction of our courts, original and appellate, as defined by Sections 35, 29 and 10 of Article 7 of the Constitution.
 Section 35 of Article 7 of the Constitution vests the district courts throughout the State with original jurisdiction in all civil matters "regardless of the amount in dispute." Thus, in order for the court to become seized of jurisdiction in the first instance, there must be a dispute or controversy over some matter or right in which the opposing parties have an interest. For one to sue, his interest must be real and actual. . . .
 The Uniform Declaratory Judgments Act has not had the magical effect of changing the above stated basic tenets. In truth, to construe the statute as extending jurisdiction to the courts to validate legislative action, or otherwise render advisory opinions, would effect an unconstitutional enlargement of the grant of judicial power which is restricted to real controversies.
 . . . [I]t is settled that courts of Louisiana are without power to render judgments over moot and abstract propositions and that a litigant not asserting a substantial existing legal right is without standing in court.
 . . . [I]n order for an action to be entertained under the Act, it must be based on an actual controversy. . . .
614 So.2d at 702; [Emphasis added].
Under the analysis of the Louisiana Supreme Court in Church Point, Mr. Menard, in his capacity as parish president, acting independently from the parish council, would lack standing to seek a declaratory judgment in this particular matter. The proper person to bring such an action is the parish council, as the right to abolish a special district under La.Const. art. VI § 15 is a power granted "the governing authority of a local governmental subdivision." La.Const. Art. VI § 44(4) defines "governing authority" as "the body which exercises the legislative functions of the political subdivision." Under the St. Landry Parish Home Rule Charter, the parish *Page 5 
council is the "legislative branch" of the parish government.[1] As such, the parish council is the "governing authority" of the parish for purposes of La.Const. art. VI § 15. Further, Art. VIII Section 8-07(A) of the home rule charter specifically grants to the parish council the"general power over any special district. . . previously created by the governing authority of St. Landry Parish or hereafter created by the council including, without limitation, the power to abolish the agency. . ." [Emphasis added].
III. IS THE PARISH PRESIDENT SPECIALLY AUTHORIZED TO SUE ON BEHALF OFTHE PARISH COUNCIL AS ITS AGENT?
As previously noted, the St. Landry parish president lacks standing toindependently bring this action for declaratory judgment. There remains the question of whether the parish president, as executive officer of the parish government, is empowered by the provisions of the home rule charter to institute such an action on behalf of the parish governing authority, without further approval from the parish council.
La. Code of Civil Procedure art. 694 is pertinent to this discussion and provides:
 Art. 694. Agent
 An agent has the procedural capacity to sue to enforce a right of his principal, when specially authorized to do so.
 For all procedural purposes, the principal is considered the plaintiff in such an action. The defendant may assert any defense available against the principal, and may enforce his rights against the principal in a reconventional demand.
[Emphasis added].
Thus, the St. Landry Parish home rule charter provisions must be examined to determine whether the parish president has been speciallyauthorized to institute litigation on behalf of the parish council. We recognize that under Article IV, Section 4-01, the parish president is given the power to "appoint, direct, and supervise the heads of all departments . . ." Insofar as the parish president has the authority to "direct and supervise" the head of the legal department under Article IV, Section 4-01, this administrative authority does not confer upon him any special authorization to act as agent for the parish government in the instigation of a lawsuit as required by La.C.C.P. Art. 694. *Page 6 
Neither do we find any special authority to sue conferred upon him within the powers and duties assigned to him as parish president under Article III, Section 3-10, providing:
 Section 3-10. Powers and Duties of the President.
 The president, as chief executive officer of the parish government, shall have the following powers and duties:
 (1) Insure that all laws, provisions of this charter, and acts of the council, subject to enforcement by the president or by officers subject to the president's direction and supervision, are faithfully executed.
 (2) Submit the annual budget and the five-year capital budget to the council.
 (3) Submit to the council and make available to the public, within ninety days after the end of the fiscal year, a complete report on the finances and administrative activities of the parish as of the end of each fiscal year.
 (4) Make any other reports as the council may reasonably request to enable the council to function.
 (5) Sign contracts, acts of sale, and other obligations as may be authorized by the council.
 (6) Attend council meetings personally or through a designee and furnish any information regarding parish government requested by any member of the council.
 (7) Perform any other duties that are specified in this charter or may be required by the council, not inconsistent with this charter, the constitution, or state law.
 (8) Serve as a non-voting member on all boards, commissions and authorities.
 (9) Exercise veto power over ordinances and line items in operating and capital improvement budgets subject to an override by the council as is provided for in Article II, Section 2-12 of this charter.
 (10) Perform all of the powers and duties assigned to the chief administrative officer when that position is inactive. *Page 7 
 (11) Appoint, suspend, or remove all parish government employees and appointive administrative officers in accordance with parish personnel policies and applicable law except as otherwise provided by this chapter.
IV. CONCLUSION
It is the opinion of this office that Mr. Menard, in his capacity as parish president, lacks standing to file a suit for declaratory judgment addressing the authority of the parish government to abolish certain road works districts currently operating in St. Landry Parish. The proper party to file such an action is the parish council. There is no existing special authority under the provisions of the home rule charter empowering the parish president to sue on behalf of the parish council as its agent. However, the parish council may, by resolution, specifically authorize the parish president to act as its agent for the purposes of bringing this particular action for declaratory judgment. See Article II, Section 2-10(C) regarding the adoption of resolutions by the council.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY: __________________________ KERRY L. KILPATRICK Assistant Attorney General
 KLK:arg
[1] See Art. 1 Section 1-03, St. Landry Parish Home Rule Charter.