424 So.2d 1166 (1982)
Genevieve SMITH, et al.
v.
Rev. I. Henderson RILEY, et al.
No. 82 CA 0306.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
*1167 Joseph L. Waitz, Houma, for plaintiffs and appellees.
Robert H. Marve, III, Houma, for defendants and appellants.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is a suit for injunctive relief filed by certain members of the New Mount Zion Baptist Church seeking to prohibit the defendants from entering the premises of the church and from participating in any functions of the church until such time as an election could be called by the members of the church to elect a new Board of Trustees according to the provisions of the church charter. Defendants are Rev. I. Henderson Riley, pastor and ex-officio member of the Board of Trustees, and other members of the Board of Trustees who were appointed to the Board by the pastor.
The petition for injunction was filed on January 11, 1982. On January 15, 1982, a temporary restraining order was issued ordering that the defendants be prohibited from preventing plaintiffs and other church members from having unencumbered rights of ingress and egress to attend Sunday church functions and ordering defendants to open the church on Sundays.
Among several exceptions filed by defendants was an exception to the subject matter jurisdiction of the court. This exception was dismissed along with other exceptions on January 20, 1982. Trial on the merits was begun also on that date. Written reasons for judgment were filed by the trial judge on February 11, 1982. On February 18, 1982, judgment was signed which *1168 ordered the following: (1) That Rev. I. Henderson Riley, pastor, of the New Mount Zion Baptist Church notify the congregation that an election would be held on the second Sunday after the effective date of the judgment to elect the entirety of the Board of Trustees; (2) that the election be conducted in accordance with the rules provided in Roberts Rules of Order (sic); (3) that all adult members of the congregation who had paid six months' dues, consecutive or otherwise, during the calendar year of 1981, would be permitted to cast a vote; and, (4) that Mr. H. Minor Pipes, Attorney at Law, be appointed Master to ascertain the eligibility of the voters and to provide an open forum for the nomination of candidates and to further insure that the votes are cast and counted in a democratic manner with results verified and promulgated.
A motion and order for a suspensive appeal was signed by the trial judge on February 26, 1982, and bond was fixed in the amount of Five Hundred Dollars ($500.00). Bond was not timely filed, and on April 7, 1982, plaintiffs filed a rule to show cause why the defendants' suspensive appeal should not be dismissed since the legal delays for furnishing bond had passed and defendants had not furnished bond; why the appeal should not be considered a devolutive appeal; and why the election, as called for in the original judgment, should not be conducted on Sunday, April 18, 1982. Bond for the suspensive appeal was furnished and filed in the record on April 12, 1982. On April 15,1982, the day of trial on the rule, defendants filed a declinatory exception on the ground that the court was without jurisdiction to hear the rule because the trial judge had already signed the order of appeal.
The court found that the bond fixed in the order of appeal was not posted timely in accordance with LSA-C.C.P. arts. 1974 and 2123. The trial court dismissed the suspensive appeal and ordered that the appeal be continued as a devolutive appeal. The court further ordered that the election taken place on April 25, 1982.
Defendants next applied for writs on the judgment of the rule which were denied on April 22, 1982.
The case is now before this court on devolutive appeal. Appellants urge three specifications of error.

SPECIFICATIONS OF ERROR
1. The trial court erred in refusing to sustain appellants' exception of lack of jurisdiction over subject matter relative to appellees' original petition for injunctive relief.
2. The trial court erred in refusing to sustain appellants' exception of lack of jurisdiction over subject matter relative to appellees' rule to show cause.
3. The trial court erred by modifying the substance of the original judgment.

SPECIFICATION OF ERROR NO. 1
The substance of this specification of error is that plaintiffs' original petition describes basically an internal controversy over church policy, administration, and implementation of church doctrine and principle and thus civil courts do not have subject matter jurisdiction.
At the trial on the merits, the trial judge found the following:
"Considering the evidence adduced, it is evident that for at least the past twenty years, the membership of the Board of Trustees has not been filled by election of the congregation, as provided for in the Articles of Incorporation, but rather by appointment of the Pastor, sometimes with the ratification of the Board of Trustees and also on occasion with ratification by the congregation. This custom and practice has departed from the Articles of Incorporation.
At the last meeting a novel situation developed wherein an apparent majority of the congregation present disagreed with some of the actions of the Board and of the Pastor. Neither custom and practice nor the Articles of Incorporation provide for this eventuality. Failing to find a solution to the problem of effectuating *1169 the will of the apparent majority of the congregation (stockholders) in either the Articles of Incorporation or the previous custom and practice of the Church, the Court is drawn inexorably to the conclusion that in order to provide an equitable solution the court will have to order and does hereby order that an election be held by which a new Board of Trustees shall be elected. Article III of the Articles of Incorporation, however bereft of provisions for contingencies the Church now faces, is clear as to its requirement of congregational assent in the staffing of the Board of Trustees. Recognizing this fact, the Court feels that an election is mandated.
While it is claimed by defendants that the termination of the rights of the female members of the congregation to participate in the temporal matters of the Church has biblical authority, that action also flies in the face of the Articles of Incorporation which defines shareholders and which articles do not permit limiting the rights of any shareholders by either the Board of Trustees or the Pastor. The Court will therefore declare the action of the Board of Trustees which limits participation of female members of the Church to be invalid, at least civilly.
The Court also finds the action of Reverend Riley, acting alone and without any authority other than his own, in removing some 29 members of the stockholders or congregation from the Church to be invalid."
. . . . .
"The Court cannot and will not address itself to matters or pass judgment on the legitimacy of those acts which are strictly within the purview of Church doctrine and religious policy formation or implementation. The First Amendment of the United States Constitution, as interpreted by the Courts, wisely prohibits such an intrusion into the spiritual machinations of a religious institution. Therefore, the Court has restricted itself to providing a means by which this organization, as an incorporated entity, may by means of an election, a vehicle the organization has provided for itself in its articles, resolve the current dispute."
Article III of the Articles of Incorporation provide as follows:
"The congregation shall elect a board of trustees once a year, to be composed of ten (10) members, and the minister shall in addition to said ten members also be ex-officio a member of said board, and shall be the president thereof, making 11 members in all. Said Board shall be elected on Friday before the first Sunday in each year, by the members of the congregation of said Church, who shall be members of this corporation. Said Board shall organize, and shall elect a Clerk and also a Treasurer, who shall be members of the congregation, but may be members of the Board of Trustees also. The said Trustees shall be elected according to the customs and usages of said Church, and the manual provided by said Church. The same Board shall hold over from year to year without a new election, or until their successors are elected and qualified, with the assent of the congregation; provided that one fourth of the members of said congregation shall be entitled to call an election for a new Board of Trustees on the date appointed above, by written petition signed by one fourth of the members of said congregation presented to the pastor and president at least seven days previous to the date fixed herein for said election."
Appellants argue that courts are precluded from acting in this case by the United States Constitution, Amendments I, XIV and the Louisiana Constitution, Article 1, § 8. Appellants cite numerous cases for the proposition that religious bodies may decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952); Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 2379, 49 L.Ed.2d 151 (1979); Jones v. Wolf, 443 *1170 U.S. 595,596,99 S.Ct. 3020,3022, 61 L.Ed.2d 775 (1979); Bourgeois v. Landrum, 396 So.2d 1275 (La.1981); Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666 (1872).
There are essentially three matters in this case which must be examined: (1) the order to elect a new Board of Trustees; (2) the Court's determination that the action of the Board of Trustees in limiting participation by female members of the Church was invalid; and, (3) the Court's determination that the action of Rev. Riley in removing twenty-nine members of the congregation was invalid.
The trial court had the authority to determine whether the Board of Trustees was legally constituted and to issue such orders necessary to enforce the church's compliance with its own Articles of Incorporation. In Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir.1980), this court was faced with a similar factual situation. We said, at page 197, the following:
"..., when a nonprofit religious corporation has established itself by a charter and has provided in the charter the time and method of electing its board of directors, the issue as to whether or not the board of directors has been validly elected according to the charter is a question cognizable by the civil courts of this state. The procedural niceties attending the election of a board of directors for a non-profit religious corporation have nothing to do with religious law, custom or policy and are not ecclesiastical matters within the exclusive domain of a particular religious group. A church member who claims that the board of directors was not elected according to the procedures set forth in the charter has a right to have his claim heard by a civil court in this state." (Cites omitted)
Appellants argue that it was the custom of the church to allow members of the Board to serve from year to year without the necessity of an election. It is true that the article does provide that the "same Board shall hold over from year to year without a new election, or until their successors are elected and qualified, with the assent of the congregation,...". This clause does not, however, provide that new members of the Board, appointed by the pastor and never voted on by the congregation, may legally serve with the assent of the congregation. The article clearly provides in the first sentence that "(t)he congregation shall elect a board of trustees...". There is evidence that the congregation had given assent to all actions of the Board for many years prior to 1982 (assent was not given in 1982). This assent is enough to continue duly elected members in their Board positions, but it cannot substitute for an election of new members. Neither the Articles of Incorporation nor any other authority allows for the pastor to appoint members of the Board of Directors.
It is also true that there is a reference to custom and usage in Article III, but that reference is ambiguous and probably refers to how the election should be conducted. The clear intent of the article is to provide for election of new members of the Board by the congregation and for yearly assent to maintain the members of the Board in office. It is evident that for at least twenty years the membership of the Board has not been filled by election of the congregation. It is also evident that absent a suit in civil court, the congregation would have no other means of enforcing the mandate found in the Articles of Incorporation. Since the date set for the election by Article III had passed, it fell to the court to provide a new date to fullfill the intent of the article. An election was properly ordered by the trial judge.
In his reasons for judgment, the trial judge declared invalid the actions of the Board of Trustees which limited participation by female members of the church. The Articles of Incorporation do not differentiate between male and female members of the congregation. At trial no evidence was presented to establish church doctrine or policy that limited participation by female members. In the absence of any evidence of specific church doctrine to the contrary, we must conclude that females, as *1171 members of the congregation, are members, also, of the corporation and as such are entitled to the same rights and privileges as male members of the corporation. Additionally, we have said that the defendant members of the Board of Trustees were not duly elected by the congregation. Since these members were holding office illegally, they could not validly act on behalf of the corporation. See State ex rel. Nelson v. Ellis, 140 So.2d 194 (La.App. 4th Cir.1962), writ denied, 151 So.2d 544 (La.App. 4th Cir.1963).
The trial court next found that the action of the pastor in removing twenty-nine members of the congregation was invalid.
This court has held that church members are not entitled to rely on the incorporation of a church under state laws as the basis for resort to civil courts for redress of allegedly violated rights, if these rights require a determination of ecclesiastial matters. Macedonia Baptist Foundation v. Singleton, 379 So.2d 267 (La.App. 1st Cir.1979); Henry v. Newman, 351 So.2d 1277 (La.App. 1st Cir.1977). However, such is not the situation presented in the instant case. The pastor, Rev. Henderson Riley, acted with no authority whatsoever in removing these twenty-nine members. No evidence was adduced to show authority in church law, doctrine, dogma or practice for his actions; nor is any authority found in the Articles of Incorporation. The evidence does establish that the removal of these members, as well as the disenfranchisement of female members, was the result of the efforts of a minority group of the church (including the pastor and certain members of the Board of Trustees) to impose their will on the majority, who questioned their authority to do so. As stated in Fluker Community Church v. Hitchens, 419 So.2d 445 (La.1982), at page 447,
"As part of its neutral principles analysis, a state may adopt a presumption that, absent some indication to the contrary, a voluntary religious association is represented by a majority of its members." (Emphasis added)
We find the unilateral, authoritative actions of the pastor and his "appointed Board members" to be in conflict with the intent of Article IV of the Articles of Incorporation which read as follows:
"This corporation .... shall be authorized and empowered to make rules, bylaws and ordinances, and do everything needful for its good government and support not repugnant to the Constitution and laws of the United States, to the Constitution and Laws of this State, to the instrument upon which this corporation is formed and established, or to the laws and regulations of the BAPTIST CHURCH not in conflict with this act."
The intent expressed in this article is for the congregation to make the rules by which the church is governed, as long as the rules are not repugnant to the Constitution and laws of the United States and the State of Louisiana, the charter, and the laws of the Baptist Church. Clearly, the pastor usurped the authority given to the congregation in this article.
We are not presented with a situation in which expulsion from the church is a matter of interpretation of church doctrine or policy or is a matter of ecclesiastical concern.[1] The members did not either ecclesiastically or civilly submit themselves to be bound by the unilateral actions of the pastor. As members of the congregation, they acquired the rights, privileges, and duties of all members of the congregation as evidenced in the charter. Their expulsion was illegal and unauthorized, and thus, the decision of the trial court to reinstate them was correct.

SPECIFICATION OF ERROR NO. 2
Appellants' second specification of error is that the trial court had no jurisdiction to hear appellees' rule to show cause because an order of appeal had been signed which vested jurisdiction of the case in the Court of Appeal.
LSA-C.C.P. art. 2088 reads as follows:
"The jurisdiction of the trial court over all matters in the case reviewable under *1172 the appeal is divested, and that of the appellate court attached, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal....."
The appeal bond is an increment of jurisdiction in the appellate courts, and this jurisdiction does not vest until the timely filing of the appeal bond. Guilliot v. City of Kenner, 326 So.2d 359 (La.1976). Appellants obtained an order for suspensive appeal. It is undisputed that the bond was not timely filed. Because bond was not timely filed, the trial court continued to have jurisdiction over the case and had full authority to dismiss the appeal as suspensive and continue it as devolutive. See Knox v. Brown, 325 So.2d 295 (La.App. 3d Cir.1976).

SPECIFICATION OF ERROR NO. 3
Appellants contend that the judgment was effective February 18, 1982, and that since no election was held on the second Sunday thereafter, the trial judge could not subsequently set a new date because to do so was to alter the substance of the judgment in violation of LSA-C.C.P. art. 1951.
The trial court judgment of February 18, 1982, reads as follows:
"That the Rev. I. Henderson Riley be, and he is hereby, ordered to notify the congregation of the New Mount Zion Baptist Church that there will be an election on the second Sunday after the effective date of this judgment to elect the entirety of the Board of Trustees....."
The trial judge held that the order of suspensive appeal suspended the effective date of the judgment and that when the order of suspensive appeal was vacated, only then did the judgment become effective. He thus set a new date for the election, April 25, 1982, which was the second Sunday after the date the suspensive appeal was vacated and the original judgment became effective.
Nothing substantive was altered in the second judgment. The trial judge exercised the clear authority given to him under LSA-C.C.P. art. 2088(7) which reads as follows:
"The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to ...
(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal." (underlining by the court)
The execution or effect of the judgment of February 18, 1982 was no longer suspended by the order of suspensive appeal. The trial judge thus had the authority to execute and give effect to that judgment by setting a new date for the election. The trial judge took a common sense, reasonable approach to the problem presented and clearly followed the express law.
For the above reasons, the judgment of the district court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] Developments In The Law, 1980-1981Louisiana Civil Procedure, 42 La.L.Rev. 676 (1982).