974 So.2d 164 (2008)
Murphy J. WHITE, Plaintiff-Appellant,
v.
BOARD OF DIRECTORS OF ST. ELIZABETH BAPTIST CHURCH, et al., Defendant-Appellees.
No. 42,903-CA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*165 Murphy J. White & Assoc. by Murphy J. White, Mansfield, for Appellant.
R. Lane Pittard, Benton, for Appellees.
Before BROWN, PEATROSS and MOORE, JJ.
MOORE, J.
Murphy J. White appeals a judgment that rejected his claims for declaratory judgment, injunctive relief and damages, and that further appointed a special master and ordered the defendants, the board of directors of St. Elizabeth Baptist Church, to hold a directors' election. For the reasons expressed, we affirm.

Factual Background
This is the third suit by Murphy White, an attorney appearing pro se, seeking to remove Moses Hughes as pastor of St. Elizabeth, a nonprofit corporation domiciled in Mansfield, Louisiana. The first suit, filed in April 2005 and seeking injunctive relief, was dismissed on an exception of no cause of action and not appealed. The second suit, filed in May 2005 and seeking to nullify allegedly ultra vires acts and obtain injunctive relief, was also dismissed on exceptions of no cause of action. This court affirmed in an unpublished opinion, *166 White v. Hughes, 40,864 (La.App. 2 Cir. 5/17/06), 929 So.2d 297 (table).
The instant suit, filed in June 2006, recited a litany of accusations against Rev. Hughes. Specifically, Hughes charged lumber at Ivey Lumber on the church's account, without authority and for his personal use; he stole money from the collection pan and removed furniture from the church; he brought a guest speaker to the church, a Mr. Granville, representing him as a California lawyer when in fact he was not a lawyer; he brought a guest preacher to St. Elizabeth, a Rev. Howard, who brandished a knife from the pulpit and threatened to cut anybody who "messed with" Hughes; he solicited the congregation to give him $1,000 to buy into a pyramid scheme; and he ran up outstanding arrest warrants for criminal nonsupport and NSF checks. Despite this damning conduct, the church's board of directors never took up White's motion to terminate Hughes. In fact, the board held a meeting in December 2005, authorizing an additional person to sign checks on the church's account and paying Hughes for providing music at two services; however, only eight of the 12 board members were present, and White was adamant that the four absent members, who had been vocal in calling for Hughes's ouster, never received notice of the meeting.
White sought diverse relief: (1) a declaration that the described conduct was ultra vires and the transactions null and void; (2) a declaration enjoining Hughes from committing similar acts in the future; (3) a declaration that the board mismanaged the corporation; (4) an injunction barring Hughes from serving as pastor of St. Elizabeth; (5) a judgment ordering the church secretary, Donald Davenport, to refund all money disbursed to Hughes or others for his ultra vires transactions; (6) general damages for the board's breach of fiduciary duties; (7) general and special damages for Hughes's ultra vires acts; (8) a reservation of rights to submit the file to law enforcement authorities; and (9) general and equitable relief.
Hughes filed an exception of no cause of action on grounds that he was not a member of the board. The district court sustained it, and White has not appealed this partial final judgment. The board filed exceptions of res judicata, no cause of action, and vagueness, which the court denied.
The matter came to trial in March 2007. The witnesses related, in great detail, each event chronicled in the petition. Two board members aligned with Hughes, Walter White and Charlie Dinkins, insisted that Murphy White, as well as all board members wishing to oust Hughes, received proper notice of meetings. The church's secretary and clerk, Donald Davenport, also insisted that proper notice was sent to all board members, but admitted he did not personally send notices. These witnesses were generally noncommittal about the allegations against Hughes. They said they "heard about" the unauthorized charges at Ivey Lumber, but they were not convinced this was illegal since Hughes was trying to initiate an outreach program and needed supplies. They seemed generally willing to forgive their pastor's shortcomings, and Davenport stated directly that it was in the church's best interest to retain Hughes as pastor.
Two witnesses were aligned with Murphy White: Rutha White and Robert White. Ms. Rutha, Murphy White's sister and the church's former assistant secretary, testified that the charges at Ivey Lumber, though small (totaling under $100), were illegal, and the church had no outreach program. Robert White, Murphy White's father, insisted he did not receive notice of the December 2005 board *167 meeting and, in his view, that meeting was illegal. He felt it was against the peace and dignity for a guest preacher to brandish a knife in the sanctuary. He added that whenever the subject of Hughes was broached, tensions flared and on one occasion a board meeting had to be dissolved because of loud argument.
Murphy White testified in a narrative, relating that St. Elizabeth had been in existence for 140 years but was not incorporated until he drafted its charter in 1994. He developed his allegations and stated that it was not in the church's best interest to retain a pastor with an arrest record, a jail record, and history of dipping into the collection pan. He also testified that church membership had plummeted under Hughes's tenure, but admitted that many of the names of lapsed members he provided in discovery had died, left town for other employment, or were actually still attending St. Elizabeth. He admitted threatening to call the law to a board meeting when tempers flared over the subject of Hughes. On examination by the court, White stated that the charter called for an annual election of the board of directors, but no election had been, held since 1996.
The court ruled from the bench that the board was not properly constituted according to its charter. It therefore ordered an election within 60 days. It also appointed a special master, Richard Johnson, to oversee the election, and to assure that the legal board's first action was to vote on retaining Hughes. By written judgment, the court also ruled that White failed to meet the requisite burden of proof to support the claims asserted and the relief requested. White has appealed, raising five assignments of error,

Discussion: Declaratory and Injunctive Relief
By his first assignment of error, Hughes urges the district court erred in failing to render declaratory judgment that Hughes committed certain acts and that these acts were not in the church's best interest. He lists five acts: (1) theft from the church; (2) assisting in the unauthorized practice of law at the church; (3) facilitating his friend and agent, Rev. Howard, to come to the church and threaten members with a knife; (4) soliciting members to participate in an illegal pyramid scheme; and (5) having a number of outstanding arrest warrants on his record. The argument is chiefly factual, but it contends that by misrepresenting Mr. Granville as an attorney, Hughes was a principal to the unauthorized practice of law, a violation of La. R.S. 37:212; the pyramid scheme that Hughes promoted during a church service subjected members to "possible" prosecution for interstate transportation of stolen goods, a violation of 18 U.S.C. § 2314; and that criminal nonsupport made Hughes "worse than an infidel," 1 Timothy 5:8.
By his second assignment, White urges the district court erred in failing to render declaratory judgment that the board breached its fiduciary duties by retaining Hughes as pastor. White contends that the fiduciary duty imposed by La. R.S. 12:226 A is a duty to act in the best interest of the corporation. Guidry v. Bank of LaPlace, 94-1758 (La.App. 4 Cir. 9/15/95, 661 So.2d 1052), writs denied, 95-2498, 2490, 2477 (La.1/5/96), 666 So.2d 295, 296. White urges that the case is virtually identical to Mary v. Lupin Foundation, 609 So.2d 184 (La.1992), which recognized that a dissenting shareholder has a cause of action against the board of a nonprofit corporation for an alleged breach of fiduciary obligation under R.S. 12:226.
By his third assignment, White urges the district court erred in failing to enjoin Hughes's employment at St. Elizabeth because of his acts contrary to the church's *168 best interest. White concedes there is no direct authority for an injunction to terminate a pastor, but contends that misappropriation from an employer warrants termination. Sim v. Beauregard Elec. Coop. Inc., 322 So.2d 410 (La.App. 3 Cir.1975).
The board responds that the relief sought by White does not fit the procedure of the declaratory judgment as it will not remove uncertainty or terminate the dispute. La. C.C.P. art. 1876; Williams v. City of Baton Rouge, XXXX-XXXX (La.App. 1 Cir. 2/14/03), 848 So.2d 9. As a nonprofit corporation, the church is managed by its board of directors; as long as the board decides matters rationally, honestly, and without a disabling conflict of interest, its decision will not be reviewed by the courts. Atkins v. Hibernia Corp., 182 F.3d 320 (5 Cir.1999). The board submits that the record simply does not prove bad faith, criminal acts, fraud, or willful or wanton misconduct. Moreover, the choice of a pastor is an ecclesiastical matter not subject to civil review. Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); LeBlanc v. Davis, 432 So.2d 239 (La.1983). Finally, the board submits the testimony was equivocal and does not support White's interpretation of the various incidents.
Under the Code of Civil Procedure, a court has the jurisdiction to declare rights, status, and other legal relations whether or not further relief is or could be claimed. La. C.C.P. art. 1871. The purpose of the procedure is to settle and afford relief from uncertainty and insecurity with respect to those rights, status and other legal, relations; the articles should be liberally construed and administered. La. C.C.P. art. 1881. The scope of the procedure is nevertheless limited:
Art. 1876. Court may refuse declaratory judgment
The court may refuse to render a declaratory judgment or decree where such judgment, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding.
A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute. Williams v. City of Baton Rouge, supra, and citations therein. The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. Id.
The suitability of a declaratory judgment requires us to analyze the true nature of the case. The thrust of White's action is to remove Hughes as pastor of St. Elizabeth. A declaration that some of Hughes's acts were ultra vires or illegal, or a declaration that the board has relinquished its duty by failing to terminate him, would not terminate the real controversy; it would be an advisory opinion without practical effect.
Moreover, the selection of a pastor strikes us as an inherently ecclesiastical matter. The First. Amendment of the U.S. Constitution and La. Const. Art. 1, § 8, both guarantee religious freedom and are interpreted to forbid courts from interfering in the ecclesiastical matters of religious groups. Serbian Eastern Orthodox Diocese v. Milivojevich, supra; Hawthorne v. Couch, 41,162 (La.App. 2 Cir. 9/21/05), 911 So.2d 907, and citations therein. This prohibition extends to matters of religious discipline, faith or custom. LeBlanc v. Davis, supra; Fluker Community Church v. Hitchens, 419 So.2d 445 (La.1982). White's argument, suffused as it is with references to morality, church stewardship, *169 and the biblical injunction of family support, only underscores that the true issue here lies deep within the protected sanctum of the First Amendment. We perceive no manifest error in the district court's decision to refuse the declaratory judgment.
For the same reasons, the court properly denied White's request for injunctive relief. To bar Hughes from performing his duties would be to interfere in peculiarly ecclesiastical matters and trample on the traditional protection of religious groups. Moreover, an injunction is warranted only in "cases where irreparable injury, loss, or damage may otherwise result to the applicant." La. C.C.P. art. 3601 A. The evidence presented at trial, while perhaps not flattering to Hughes or to certain members of the board, falls far short of the statutory standard. In short, the district court did not abuse its discretion in denying the injunction.
These assignments of error lack merit.

Board Election and Special Master
By his fourth assignment of error, White urges the court erred in appointing a special master without the consent of the plaintiff, in violation of La. R.S. 13:4165. By his fifth assignment, he urges the court erred in ordering an election of the board of directors when other remedies (injunction and declaratory relief) were available to the court and neither party requested an election. White contends that the order is tantamount to a mandamus, which is not proper if any other remedy is available at law. Wiginton v. Tangipahoa Parish Council, XXXX-XXXX (La.App. 1 Cir. 6/29/01), 790 So.2d 160, writ denied, 2001-2541 (La.12/7/01), 803 So.2d 971.
The board responds that injunction and declaratory judgment were emphatically not available, for the reasons discussed in the first three assignments of error. The board cites White's own admission that St. Elizabeth had not held an annual election for the board in over 10 years; hence, the order was reasonable and necessary to resolve the issues. Further, it argues that at trial, White was "relatively agreeable" to the appointment of the special master, and should not now be allowed to challenge it. Finally, it submits that the appointment was proper under the "exceptional circumstances" provision of. R.S. 13:4165.
As noted above, courts will not interfere in purely ecclesiastical matters. Hawthorne v. Couch, supra, and citations therein. However, not all church disputes are purely ecclesiastical. The court has authority to determine whether a church board of trustees was legally constituted in accordance with the church's charter, and to issue any orders necessary to enforce compliance. Smith v. Riley, 424 So.2d 1166 (La.App. 1 Cir.1982); Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1 Cir. 1980). The court may even act when, pursuant to a church charter or bylaws, the congregation dismisses a pastor who refuses to relinquish his post. LeBlanc v. Davis, supra; Rose Hill Baptist Church v. Jones, 425 So.2d 348 (La.App. 3 Cir.1982).
The hiring or retention of a pastor was a function of St. Elizabeth's board of directors. Murphy White testified that the charter required an annual board of directors' election, but that no such election had been held since 1996. The current conflict over Hughes could be quickly obviated by the action of a properly constituted board. On the showing made, the district court was entitled to find that the election of a board of directors in accordance with the charter was a prerequisite to resolving the controversy. An order to that effect was appropriate to enforce compliance. Smith v. Riley, supra; Wilkerson v. Battiste, supra. We perceive no abuse *170 of the court's discretion in fashioning this remedy.
White correctly shows that under the statute, the appointment of a special master requires "the consent of all parties." La. R.S. 13:4165; Judson v. Davis, XXXX-XXXX (La.App. 1 Cir. 6/29/05), 916 So.2d 1106, writ denied, XXXX-XXXX (La.2/10/06), 924 So.2d 165. However, this record shows that corporate formalities had been disregarded for over a decade, and resolution of the issue required stringent adherence to the charter. In these circumstances, the appointment of a special master was reasonable and necessary to effectuate the remedy. Clement v. Four Winds Tribe-La., 2005-652 (La.12/30/05), 921 So.2d 193, writ denied, XXXX-XXXX (La.5/6/06), 930 So.2d 32. Moreover, when the district court announced the appointment of Mr. Johnson as special master, White stated:
Your honor, for the record, I have no objection to the selection of Mr. Johnson. I just maybe have a soft objection to the procedure but I have no objection to the selection.
In the context of the entire case, we must construe this ambivalent statement as a tentative consent to the special master appointment. The dispute over Hughes was festering and intractable, and corporate formalities had been long disregarded. In short, the appointment was reasonable and necessary to effectuate the remedy crafted by the court. We perceive no abuse of discretion. These assignments of error lack merit.

Conclusion
For the reasons expressed, the judgment rejecting Murphy White's demands for declaratory judgment and injunctive relief, and ordering an election for the St. Elizabeth's Baptist Church board of directors under the guidance of special master Richard Johnson, is affirmed. Costs are to be paid by the appellant, Murphy White.
AFFIRMED.