Judgment rendered August 9, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,209-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| RANDY BOYETT, GARY CAIN, MICHAEL B. COCKERHAM, TED HAYES, RAYMOND J. LASSEIGNE, C.A. "JACKIE" LEWIS, MIKE PEARSON, ROBERT PERRY, WADE RASPBERRY, STEVE ROBINSON, CLINTON SCATES, HENRY W. SMITH, JR., KEN THOMAS, MICKEY WALKER, and RONALD L. WORLEY | Plaintiffs-Appellants |

versus

| | |
|---|---|
| FIRST BAPTIST CHURCH OF BOSSIER | Defendant-Appellee |

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 166,929

Honorable Charles A. Smith, Judge

* * * * *

| | |
|---|---|
| DOWNER, JONES, MARINO & WILHITE, LLC By: Allison A. Jones     Marcus D. Sandifer | Counsel for Appellants |
| KEAN MILLER, LLP By: Michael D. Lowe     Georgia N. Ainsworth | Counsel for Appellee |

* * * * *

Before HUNTER, MARCOTTE, and ELLENDER, JJ.

HUNTER, J., dissents with written reasons.

**ELLENDER, J.**

The plaintiffs, 15 former members of First Baptist Church of Bossier, appeal a judgment that sustained First Baptist's exception of prescription and dismissed all claims that amendments to First Baptist's articles of incorporation executed in 2014 were null and void. The plaintiffs also contest the court's failure to consider their amended petition. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

First Baptist was formed as a nonprofit corporation in 1937. Its original charter ("the 1937 Articles") provided the procedure for amendments: "the affirmative vote of two-thirds (2/3) of its members present and voting at a meeting regularly called and held for that purpose after thirty days['] notice in writing, mailed to each member and enclosing copy of proposed amendment and by otherwise complying with all the requirements of law." First Baptist operated under the 1937 Articles until 2014, when the congregation hired a new pastor, Rev. Brad Jurkovich, who wanted to modernize the church's structure and, according to the plaintiffs, arrogate much more power to the pastor and diminish the role of the board of trustees.

According to the plaintiffs, after Sunday service on June 15, 2014, Rev. Jurkovich announced to the congregation that he intended to modify the 1937 Articles. After this, a voice vote was taken, the measure passed unanimously (1,597-0), and a new charter ("the 2014 Articles") was adopted. The plaintiffs were unhappy about the 2014 Articles because, among other things, these allowed the pastor to remove (unilaterally, in their view) members from the congregation, an action that previously required the

action of the board of trustees. In later filings, the plaintiffs described an "ongoing dispute" between themselves and Rev. Jurkovich, accusing him of sowing "seeds of discontent and uneasiness among the larger Church congregation." First Baptist, however, argued the church operated "without any objection from the plaintiffs" for eight years.

The situation apparently languished for some time but reached a head in early March 2022, when Rev. Jurkovich exercised his authority under the 2014 Articles to expel Randy Boyett and several other members from the First Baptist congregation.

## PROCEDURAL HISTORY

Boyett, joined by 12 expelled members and two who were not yet expelled, filed this suit for declaratory judgment on March 10, 2022. They alleged that neither Rev. Jurkovich nor any member of his leadership team complied with the 1937 Articles when they passed the 2014 Articles: the amendment did not occur at a regularly called meeting, there was no written notice of the purpose of the meeting, and there were no copies of the proposed amendment. Arguing that the 2014 action did not conform with the 1937 Articles, they sought judgment declaring the 2014 Articles null and void.[1]

First Baptist responded with exceptions of prescription, no right of action, and lack of subject matter jurisdiction.[2] The exception of prescription was based on the La. Nonprofit Corporation Law, R.S. 12:201-269, and, specifically, R.S. 12:208 A(1), titled "Defense of ultra vires." This

---

[1] One day earlier, the 13 expelled members filed a different suit, seeking a writ of mandamus to compel First Baptist to produce various church documents. This matter is not a part of the instant appeal.

[2] The exceptions of no right and lack of SMJ are not before the court.

2

establishes a peremptive period of one year in which a member of the corporation may assert "[i]nvalidity of an act of a corporation * * * by reason of the fact that the corporation was without capacity or power to perform such act[.]" First Baptist argued that amending the articles without following proper formalities was an act subject to this one-year peremptive period, *Shively v. Brunson*, 49,157 (La. App. 2 Cir. 6/25/14), 145 So. 3d 550, *writ denied*, 14-1743 (La. 11/7/14), 152 So. 3d 180; *Silliman Private Sch. Corp. v. Shareholder Group*, 01-0964 (La. App. 1 Cir. 5/10/02), 819 So. 2d 1088, *writ denied*, 02-1501 (La. 9/20/02), 825 So. 2d 1176. It also argued that a procedure or practice of the corporation should be treated as an "act" for purposes of § 208, *Coe v. Society of La. Certified Pub. Accts.*, 13-892 (La. App. 5 Cir. 5/14/14), 142 So. 3d 88. It concluded that because the alleged acts occurred nearly eight years prior, the claim was perempted.

The plaintiffs responded that their claim was more "nuanced" than a mere ultra vires claim: it was actually for breach of the fiduciary duty of disclosure, La. R.S. 12:226, in that Rev. Jurkovich had divested them of power without proper notice. As such, they contended, it was subject to the general 10-year prescription for a personal action, *Mary v. Lupin Found.*, 609 So. 2d 184 (La. 1992). They also argued that because of the lack of notice, the 2014 Articles were an absolute nullity, citing *Bethlehem Missionary Baptist Church v. Henderson*, 522 So. 2d 1339 (La. App. 2 Cir. 1988), *Jones v. Shreveport Lodge No. 122, BPOE*, 221 La. 968, 60 So. 2d 889 (1952), and *Lain v. Credit Bureau of Baton Rouge Inc.*, 637 So. 2d 1080 (La. App. 1 Cir. 1994), *writ denied*, 94-2010 (La. 11/4/94), 644 So. 2d 1049. As such, the plaintiffs urged, the action in nullity never prescribed, *Robertson v. Stonecreek Bldrs. LLC*, 50,798 (La. App. 2 Cir. 8/10/16), 200

3

So. 3d 851. They also asserted that *Shively*, *Silliman*, and *Coe* did not involve failure to provide notice, so those cases did not apply.[3]

First Baptist responded that *Shively*, *Silliman*, and *Coe* were directly on point and, in fact, the plaintiffs' cases, *Bethlehem*, *Jones*, and *Lane*, did not even address prescription or R.S. 12:208.

The matter was set for May 17, 2022, at 9:30 am. However, on May 16, at 3:39 pm, the plaintiffs filed a "First Amended Petition for Declaratory Judgment." This added Rev. Jurkovich and two other individual officers as defendants, on grounds of breaches of fiduciary duty, failure to maintain records, self-dealing, and refusal to resign after 161 members asked him to do so in October 2021. As to First Baptist, the plaintiffs restated all original allegations, adding that the 2014 Articles were "absolutely" null and void. Owing to this last-minute filing, the court passed the matter until June 21.

At the hearing, First Baptist argued the amended petition was "irrelevant" to the exceptions, as it added no new claims against the church. On the merits, First Baptist argued that because any corporate action can be ratified, it cannot be absolutely null and exempt from prescription; moreover, R.S. 12:208 sets a one-year prescriptive period, regardless how the plaintiffs styled their claim. The plaintiffs reiterated they wanted not just a declaration that the 2014 Articles were null but that First Baptist "fail[ed] to provide transparency" and "breach[ed its] duty of fair dealing and full and

---

[3] The plaintiffs also asserted that *Shively*, *supra*, was an unpublished opinion and thus "not controlling on this court or any other court," citing *Brownell Land Co. v. Oxy USA Inc.*, 538 F. Supp. 2d 954 (E.D. La. 2007). However, since the 2006 enactment of La. C.C.P. art. 2168, even unpublished opinions, if posted on the court's website, "may be cited as authority[.]" La. C.C.P. art. 2168 B; *Sonnier v. Gordon*, 50,513 (La. App. 2 Cir. 4/13/16), 194 So. 3d 47, 89 UCC Rep. Serv. 2d 486. *Shively* was posted on the court's website and may be cited for the propositions discussed therein.

4

fair disclosure"; hence, the 10-year prescriptive period for a personal action applied.

## ACTION OF THE DISTRICT COURT

The court ruled from the bench that *Shively* and *Coe* governed the case and the action for declaratory judgment was prescribed. Judgment granting the exception of prescription, denying the others, and dismissing all claims against First Baptist with prejudice was rendered on July 25, 2022.[4] The court did not mention the first amended petition.

The plaintiffs took this suspensive appeal, designating two assignments of error.

## DISCUSSION: PRESCRIPTION

By their first assignment of error, the plaintiffs urge the court erred in granting First Baptist's exception of prescription. They correctly show that because no evidence was offered, the standard of review is de novo. *Davis v. State*, 20-01020 (La. 5/13/21), 320 So. 3d 1028.

On the merits, they contend R.S. 12:208 simply does not apply to this claim: enacting the 2014 Articles was not an "act of a corporation" "by reason of the fact that the corporation was without capacity or power to perform such act." An "act," they submit, is any of the items listed as a "general power" of a nonprofit corporation in R.S. 12:207 B, such as borrowing money, donating to religious causes, or acquiring immovable property. By contrast, amending the corporation's articles is a "fundamental change in the organization and structure" and is totally different, as shown

---

[4] Over three months later, the plaintiffs filed a "Second Amended Petition for Declaratory Judgment and Injunctive Relief," on November 4, 2022. This is not included in the record and is not before the court.

5

by the fact that a separate statute, R.S. 12:237, governs "Amendment of articles generally." They claim this creates an *inclusio unius* situation and excludes amendments from the reach of § 208. Asserting a "plain reading," they contend that an "act" under § 208 is only "an act beyond the object for which the corporation was created," citing *Coe*, *supra*, and *Keeping Our Legacy Alive Inc. v. Central St. Matthew United Church of Christ*, 17-1060 (La. App. 4 Cir. 10/31/18), 318 So. 3d 130, *writ denied*, 19-0130 (La. 3/18/19), 267 So. 3d 92. They suggest that amending corporate articles is not the purpose of a nonprofit corporation, citing *Ponder v. Guitreau*, 528 So. 2d 184 (La. App. 1 Cir.), *writ denied*, 531 So. 2d 272 (1988), *Bethlehem*, *supra*, and *Keeping Our Legacy Alive*, *supra*. The fact that none of these cases even mentions prescription is, the plaintiffs argue, proof that faulty amendments transcend issues of prescription. A faulty amendment is, they submit, an absolute nullity – a point which they concede no Louisiana court has ever held – but they suggest it "would logically flow" from the jurisprudence, and thus there is no time limit on their action to declare the 2014 Articles null.

In the alternative, they suggest First Baptist's conduct in 2014 is a personal action subject to 10-year prescription, La. C.C. art. 3499, or that the one-year period of § 208 did not begin to run until First Baptist used the 2014 Articles to expel the plaintiffs, in March 2022; either way, their action is timely.

Challenges to the acts of a nonprofit corporation are regulated by La. R.S. 12:208, which provides, in pertinent part:

6

**§ 208. Defense of ultra vires**

A. Invalidity of an act of a corporation, or of a conveyance or transfer of movable or immovable property to or by a corporation, by reason of the fact that the corporation was without capacity or power to perform such act or to make or receive such conveyance or transfer, may be asserted only:

(1) In an action by a member of the corporation to set aside such act, conveyance or transfer, brought within one year after the act was done or the conveyance or transfer was consummated, which time limit shall not be subject to suspension on any ground or interruption on any ground other than timely suit[.]

The starting point for the interpretation of any statute is the language of the statute itself. *Hicks v. USAA Gen'l Indem. Co.*, 21-00840 (La. 3/25/22), 339 So. 3d 1106; *Eilts v. Twentieth Century Fox TV*, 54,757 (La. App. 2 Cir. 9/21/22), 349 So. 3d 1038. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision must be applied as written, with no further interpretation made in search of the legislature's intent. La. C.C. art. 9; La. R.S. 1:4; *Hicks v. USAA*, *supra*. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3; *Davis v. State*, *supra*; *Pernici v. City of Shreveport*, 54,474 (La. App. 2 Cir. 9/21/22), 348 So. 3d 878, *writ denied*, 22-01578 (La. 12/20/22), 352 So. 3d 84. Headings to sections are given for the purpose of convenient reference and do not constitute part of the law. La. R.S. 1:13. However, the title or heading of a statute may provide some aid if the text is unclear. *Anderson v. Ochsner Health Sys.*, 13-2970 (La. 7/1/14), 172 So. 3d 579; *Turner v. City of Shreveport*, 437 So. 2d 961 (La. App. 2 Cir. 1983).

The one-year period of § 208 is deemed to be peremptive. *Coe*, *supra*; *Rover Group Inc. v. Clark*, 18-1576 (La. App. 1 Cir. 12/12/19), 291 So. 3d 699, *writ denied*, 20-00101 (La. 3/9/20), 294 So. 3d 481.

7

The plaintiffs' fundamental argument is that amending the charter is not an "act" of the corporation and thus not covered by § 208. On close review, this reading does not comport with the plain meaning of the statute. An "act" is commonly understood as "something done that has legal significance." Act, *American Heritage Dict. of the English Lang.*, © 2022. Similarly, in the context of construing an insurance policy, "act" means "something done voluntarily by a person[,] * * * the result of the exercise of the will." *Heiman v. Pan Amer. Life Ins. Co.*, 183 La. 1045, 183 La. 195 (1935). In light of this common and approved use of the language, we do not accept that amending its charter is not an act of the corporation.

The jurisprudence under § 208 confirms the plain meaning. In *Shively*, *supra*, a member of a hunting club sued the club, a nonprofit corporation, for quo warranto on grounds that various officers illegally amended the articles of incorporation in 1994 and 1996. Although the opinion does not state precisely when the suit was filed (the hearing was in September 2013), we held, "La. R.S. 12:208 is applicable and Shively's claims were properly dismissed[.]" In *Silliman Private Sch. Corp.*, *supra*, the corporation amended its charter in 1986 to authorize an additional 1,000 shares of stock; a group of shareholders sued for injunction in 1999 to block to issuance of the extra shares. The district court found that "the claim asserted by the Shareholder Group as to the invalidity of these shares has prescribed," citing § 208 A(1), and the First Circuit adopted the court's reasons. In *Coe*, *supra*, the plaintiff contested the Society of Louisiana CPAs' longstanding use of plurality voting to fill board positions; the society amended its charter in 2009 to permit this, and the plaintiff sued for quo warranto in 2013 to nullify the amendment. The district court rejected

8

the claim as untimely, and the Fifth Circuit affirmed, saying, "members of a nonprofit organization have one year to question an act of its board of directors[.]" It added that the time limitation of § 208 applies equally to an "ongoing practice" as to an individual act.

The consistent holdings and rationale of these cases convince us that amending the corporate charter is an act of the corporation for purposes of R.S. 12:208.

The cases cited by the plaintiffs do not alter our view. In *Ponder*, *supra*, the plaintiffs challenged 1976 and 1985 amendments to their skeet club's charter by suit for injunction; the opinion does not state precisely when the suit was filed (reference is made to January 1987). The court did not address the issue of prescription because it found the corporation ratified the allegedly improper amendment. In *Bethlehem Missionary Baptist Church*, *supra*, the defendant, a pastor at the church, contested an injunction that ousted him from his position, on grounds that the meeting in which the action was taken was not properly noticed. This court dissolved the injunction, finding lack of proper notice, and providing absolutely no discussion of prescription. Although precise dates are not given, the timeline suggests the church's action was timely under § 208.

We concede that one final case, *Keeping Our Legacy Alive*, *supra*, appears to reach a different conclusion, holding that the "merger that plaintiffs seek to declare invalid is not 'an act of a corporation' as contemplated by R.S. 12:208." The Fourth Circuit found the challenge was regulated by the special statute governing mergers, R.S. 12:205. This finding, however, may be considered *obiter dictum* as the court also found, *sua sponte*, that the plaintiffs failed to state a cause of action and dismissed

9

the claim with prejudice. In our view, *Keeping Our Legacy Alive* must be limited to its very particular facts and does not negate the plain meaning of § 208 or the jurisprudence applying the statute to attempted efforts to amend corporate charters.

Because of the plain meaning of "act" in § 208, we need not parse the legislature's use of the phrase "ultra vires" in the caption of the statute. The text refers broadly to any act done "without capacity or power" to perform such act, which is consistent with the broad construction of "ultra vires" in our corporate law. *Foster v. Fisher*, 53,205 (La. App. 2 Cir. 2/5/20), 290 So. 3d 1215, *writ denied*, 20-00481 (La. 6/22/20), 297 So. 3d 761. The caption does not limit the reach of the statute.

The plaintiffs next argue that because of the lack of notice and proper formality surrounding their adoption, the 2014 Articles are an absolute nullity and, thus, any action to declare them null is imprescriptible. In support, they cite the findings that amendments were "null and void" in cases like *Bethlehem Missionary Baptist Church*, *supra*, *Jones v. Shreveport Lodge*, *supra*, and *Lain v. Credit Bureau*, *supra*. None of these cases, however, declared the amendment an *absolute* nullity, and the plaintiffs concede that no case has ever so held. An act which is an absolute nullity cannot be ratified. *J-W Oper. Co. v. Olsen*, 48,756 (La. App. 2 Cir. 1/15/14), 130 So. 3d 1017, *writ denied*, 14-0313 (La. 4/11/14), 137 So. 3d 1217; *Delta Dev. Co. v. Plaquemines Parish Comm'n Council*, 451 So. 2d 134 (La. App. 4 Cir.), *writ denied*, 456 So. 2d 172 (1984). A corporation may generally ratify the unauthorized acts of its officers or members. *McCarty v. Panzico*, 467 So. 2d 1229 (La. App. 2 Cir. 1985); *Buffone v. Mangano*, 12-0819 (La. App. 4 Cir. 5/17/13), 116 So. 3d 922; *Certified Sec.*

10

*Sys. Inc. v. Yuspeh*, 97-2004 (La. App. 4 Cir. 4/22/98), 713 So. 2d 558. Because the act may be ratified, it cannot be an absolute nullity. This argument lacks merit.

The plaintiffs raise two final arguments. First, they urge their claim is actually a personal action, subject to 10-year prescription under La. C.C. art. 3499. Obviously, the 10-year period applies "[u]nless otherwise provided by legislation," *Harrison v. Gore*, 27,254 (La. App. 2 Cir. 8/23/95), 660 So. 2d 563, 103 Ed. L. Rep. 877, *writ denied*, 95-2347 (La. 12/8/95), 664 So. 2d 426. R.S. 12:208 is special legislation that supersedes Art. 3499. Second, they contend that even if § 208 applies, the one year did not begin to run until First Baptist used the 2014 Articles to expel the plaintiffs. However, the time limit "shall not be subject to suspension on any ground or interruption on any ground other than timely suit." R.S. 12:208 A(1). The statute is peremptive. *Coe*, *supra*; *Rover Group Inc.*, *supra*. The time was not suspended while the parties took no action on the 2014 Articles. This argument, and this assignment of error, lack merit.

## JUDGMENT OF DISMISSAL

By their second assignment of error, the plaintiffs urge the court erred in dismissing First Baptist completely from the lawsuit. They contend they validly amended their petition pursuant to La. C.C.P. art. 1151, as no answer had yet been served in the case, citing *Montgomery v. Red Ball Motor Freight Inc.*, 245 So. 2d 443 (La. App. 4 Cir. 1971). They conclude the amended petition asserted additional claims against First Baptist and these claims should be addressed by the court.

Under Art. 1151, "A plaintiff may amend his petition without leave of court at any time before the answer thereto is served." First Baptist filed

three exceptions, but no answer, before the plaintiffs filed their first amended petition.[5]  In *Montgomery*, *supra*, the Fourth Circuit held that when one defendant filed an exception of "no right or cause of action," this was not the equivalent of serving an answer; the plaintiff was allowed to file her amended petition without leave of court.  We decline to adopt *Montgomery*'s reasoning because the Fourth Circuit did not appear to consider other law that specifically regulates peremptory exceptions.

The more pertinent law is that stated in La. C.C.P. art. 934:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court.  If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

First Baptist clearly showed the claims raised by the original petition were preempted under R.S. 12:208.  Could the amended petition remove the grounds of the exception?  The law takes a liberal approach to amended pleadings to promote the interests of justice.  *Reeder v. North*, 97-0239 (La. 10/21/97), 701 So. 2d 1291; *Bilyeu Bucks v. DirecTECH Sw.*, 52,474 (La. App. 2 Cir. 2/27/19), 266 So. 3d 467, 2019 Emp. Ben. Cases 64,667, *writ denied*, 19-00701 (La. 9/6/19), 278 So. 3d 970.  Nevertheless, following Art. 934, amendment is not allowed if it cannot cure the defect in the original pleading, such as after the grant of a peremptory exception.  *Bilyeu Bucks*, *supra*, and citations therein.

---

[5] The record does contain a pleading titled "Answer & Exceptions to Petition for Writ of Mandamus," filed May 13, 2022, but this was intended for the plaintiffs' separate, earlier suit and apparently placed in the instant record by mistake.

We have closely examined the first amended petition – all 145 paragraphs of it – and are constrained to find no new allegations against First Baptist that would cure the peremption of R.S. 12:208. As noted, the time limit is not subject to suspension on any ground or to interruption on any ground other than timely suit. Nowhere in this expansive amended petition is any claim that suit was filed within one year of June 15, 2014. The addition of the individual defendants, Rev. Jurkovich and First Baptist's director and secretary-treasurer, and the embellishment of claims of breach of fiduciary duty have absolutely no bearing on the timeliness of a suit to declare the 2014 Articles null and void. We recognize that the amended prayer for relief added the word "absolutely" before the expression "null and void," but this court has determined that there was no absolute nullity. In short, there is nothing in this amended petition that can revive the perempted claim. The district court did not err in dismissing First Baptist on the original and first amended petitions.

This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. The plaintiffs are to pay all costs.

**AFFIRMED**.

**HUNTER, J., dissenting.**

I do not believe this matter is subject to the one-year prescriptive period set forth in La. R.S. 12:208, as I do not believe a purportedly unanimous oral vote can be reasonably construed to constitute "an act of a corporation." Therefore, I believe the 10-prescriptive period under La. C.C. art. 3499 applies.

The question before the Court centers primarily around whether a duly licensed and incorporated entity with bylaws can, at its leisure, avail itself of the rules and procedures governing its entity. The common relief sought by these parties centers on church governance. *See*, *Thornton v. Carthon*, 47,948 (La. App. 2 Cir. 5/15/13), 114 So. 3d 554, *writ denied*, 2013-1785 (La. 11/1/13), 125 So. 3d 435. In *Thornton*, *supra*, this Court was faced with a dispute between a church pastor and the Board of Trustees. This Court stated:

> Full copies of the subject church Bylaws and Articles of Incorporation are not included in the record before us. The parts provided are incomplete, undated or in some instances, untimely filed. It is only from the transcript of the witnesses' testimony that most of the relevant provisions can be gleaned.

*Id*. at 558. This Court continued as follows:

> From our review of the ecclesiastical principles pertaining to the Free Exercise Clause, the church's selection of its own clergy is a core matter of ecclesiastical self-governance. However, the judgment now appealed does not make or interfere with any such pastoral selection by the church as a collective body. Instead, both sides seek court assistance declaring the powers for church governance under the existing corporate documents, the Articles of Incorporation and Bylaws, which the church chose to employ for its structure in reference to Louisiana's non-profit corporations law. In its order for the March 24 election of the Board, the court interpreted and declared the process for the governance of the corporate body which the church had previously adopted through its incorporation. We therefore find that ecclesiastical interference is not present in this action.

*Id.*, at 562.

Although courts will not interfere in purely ecclesiastical matters, not all church disputes are purely ecclesiastical, and the court has authority to determine whether a church board of trustees was legally constituted in accordance with the church's charter, and to issue any orders necessary to enforce compliance, and the court may even act when, pursuant to a church charter or bylaws, the congregation dismisses a pastor who refuses to relinquish his post. U.S.C.A. Const. Amend. 1; La. Const. Art. 1, § 8. *White v. Board of Directors of St. Elizabeth Baptist Church*, 42,903 (La. App. 2 Cir. 2008), 974 So. 2d 164, *writ denied*, 978 So. 2d 311 (La. 1/9/08).

But, it is now clear that a state, as a means of adjudicating a church property dispute, is constitutionally entitled to adopt a "neutral principles of law" analysis involving consideration of the deeds, state statutes governing the holding of church property, the local church's charter, and the general church's constitution and laws. The First Amendment does not require a state to adopt a rule of compulsory deference to religious authority in resolving church property disputes, where no issue of doctrinal controversy is involved. *Jones v. Wolf*, 443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979).

In *Fluker v. Cmty. Church v. Hitchens*, 419, So. 2d 445 (La. 1979), the Louisiana Supreme Court stated:

> Indeed, we think the safeguards against laws establishing religion and prohibiting the free exercise thereof contained in the First Amendment and in Article I, § 8 of our state constitution necessitate our adoption of the "neutral principles" approach. Whatever authority a hierarchical organization may have over associated local churches is derived solely from the local church's consent. Refusal to adjudicate a dispute over property rights or contractual obligations, even when no

interpretation or evaluation of ecclesiastical doctrine or practice is called for, but simply because the litigants are religious organizations, may deny a local church recourse to an impartial body to resolve a just claim, thereby violating its members' rights under the free exercise provision, and also constituting a judicial establishment of the hierarchy's religion. A. Adams & W. Hanlon, *Jones v. Wolf* : Church Autonomy and the Religion Clauses of the First Amendment, 128 U. Penn. L. Rev. 1291 (1980). Cf. Hargrave, Louisiana Constitutional Law, 42 La. L. Rev. 596 (1982).

The application of the neutral principles approach, of course, is not wholly free of difficulty. The method, as it has evolved in Georgia, and as approved by the Supreme Court in *Jones v. Wolf*, requires a civil court to examine certain religious documents, such as a church constitution, with an attitude of neutrality and non-entanglement. As the high court observed:

> "In undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining whether the document indicates that the parties have intended to create a trust. In addition, there may be cases where the deed, the corporate charter, or the constitution of the general church incorporates religious concepts in the provisions relating to the ownership of property. If in such a case the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body."

*Id*. at 447, quoting *Jones v*. Wolf, 443 U.S. at 604, 99 S. Ct. 3026, 61 L. Ed.

2d at 785. In *Fluker*, *supra*, the Louisiana Supreme Court continued as

follows:

> As part of its neutral principles analysis, a state may adopt a presumption that, absent some indication to the contrary, a voluntary religious association is represented by a majority of its members. Any rule of majority representation can be overcome either by providing in the corporate charter or the constitution of the general church, that the identity of the local church is to be established in some other way, or by providing that the church property is held in trust for the general church and those who remain loyal to it. Indeed, a state may adopt any method of overcoming the majoritarian presumption, so long as the use of that method does not impair free exercise of rights or entangle the civil courts in matters of religious controversy.

*Id*. at 447.

Historically, Louisiana courts have been reluctant to interfere with matters involving expulsion of members of a church. *See*, *State ex rel. Johnson v. Tulane Ave. Baptist Church*, 144 So. 639, (La. App. Orl. Par. 1932); *See also*, *State ex rel. Soares v. Hebrew Congregation Dispersed of Judah*, 31 La. Ann. 205 (La. 1879). However, in *Foreman v. Fryerson*, 135 La. 221, 65 So. 131 (La. 1914), the court held the expulsion of the plaintiff from membership in a church having a congregational polity "by a majority vote *regularly taken*" deprived him of all standing to sue as a church member. Furthermore, in *Slaughter v. New St. John Missionary Baptist Church*, 8 La. App. 430 (1927), the court reviewed an expulsion from a religious corporation for failure to contribute to its financial support as required by its charter, on the ground the matter involved a civil right and civil contract and not a matter of ecclesiastical discipline, faith, law, or custom.

In viewing this conundrum in the light most favorable to the church and applying the neutral principles, which are evoked by my examination of the record in purely secular terms, I believe adopting the lower court's ruling, with no substantive supporting evidence of "an act of a corporation," will ultimately lead to further complication and bifurcation of issues regarding ecclesiastical matters. As such, I believe the ruling granting the exception of prescription should be reversed, and this matter remanded to the trial court for the additional taking of evidence which should adequately illuminate the Damascus road the parties are asking this Court to blindly travel.